2013 ND 148

**Kurt G. DATZ, Plaintiff and Appellant**

v.

**Helen A. DOSCH, Defendant and Appellee.**

No. 20120435.

Supreme Court of North Dakota.

Aug. 29, 2013.

Blake Dylan Hankey and Kelsey Lee Gentzkow, Grand Forks, ND, for plaintiff and appellant; submitted on brief.

Leslie Johnson Aldrich (argued) and Joshua B.E. Nyberg (appeared), Fargo, ND, for defendant and appellee.

CROTHERS, Justice.

[¶ 1] Kurt Datz appeals a divorce judgment awarding primary residential responsibility of the parties' two minor children to Helen Dosch, distributing the marital estate after finding economic and non-economic fault by Datz and ordering Datz to pay child support and one-half of the cost of hiring a nanny for the children. We reverse on primary residential responsibility, affirm the remainder of the judgment and remand.

I

[¶ 2] Kurt Datz was 48 and Helen Dosch was 57 at the time of trial. They met while attending medical school and married in 1988. Their first child was born in 1990. After completing medical school, the parties moved to New York City, New York to begin their residencies. The parties' second child was born there in 1994. The family then moved to Havre, Montana, where their third child was born in 1996.

[¶ 3] The family moved to Bismarck in 1998 where Dosch worked five days a month and Datz worked full-time as a general internist. Datz began a vitamin business in 1998. The family moved to Dickinson in 2002 to accommodate Dosch's job as an anesthesiologist. Datz opened medical spas in Bismarck and Minot in 2004. Both practices included a spa and medical practice. Datz traveled extensively in support of his vitamin business and other endeavors. Dosch's position in Dickinson required her to work two weeks on and two weeks off. The parties hired a nanny to assist with caring for the children.

[¶ 4] In 2006, Dosch took a part-time (.7 time) position in Fargo, working about two weeks a month. Datz and the children moved from Dickinson to Bismarck.

Dosch resided in the family home in Bismarck when not living in a Fargo apartment while working there.

[¶ 5] In March and April 2011, Datz closed the Minot and Bismarck spas and medical practices without consulting Dosch. After closing the Bismarck and Minot facilities, some of the medical equipment used in the facilities was unaccounted for. Evidence was disputed about the extent of missing equipment. Loans had been taken out for the equipment in both parties' names, and Datz stopped making the loan repayments.

[¶ 6] The district court found Datz had an affair in 2011. Datz eventually admitted his relationship with the other woman, telling Dosch that he had ended the relationship, but had not, even after the parties went to marriage counseling. Datz also admitted to relationships with several other women during the marriage. During the 2011 affair, Datz spent thousands of dollars on the other woman, including buying jewelry and taking her on out-of-state trips. In the summer of 2011, Dosch went to the other woman's house and found Datz there. An altercation ensued where Dosch scratched Datz. Dosch was arrested for domestic violence.

[¶ 7] In June 2011, Dosch hired a nanny to help care for the children. In August 2011, Datz came to the family home and, after reading a letter from his attorney, became angry and accused the nanny of providing Dosch with information against him. The nanny quit soon thereafter. Dosch hired a new nanny who maintained the household and cared for the children when Dosch was working in Fargo.

## II

[¶ 8] Datz argues the district court erred granting Dosch primary residential responsibility of the minor children by failing to make adequate findings under or analysis of the best interest factors in N.D.C.C. § 14–09–06.2.

[¶ 9] District courts have substantial discretion in making determinations of primary residential responsibility; however, they must consider all factors under N.D.C.C. § 14–09–06.2(1). *Wolt v. Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786. A separate finding for each statutory factor is not necessary, but "the court's findings must contain sufficient specificity to show the factual basis for the [court's] decision." *Id.* It is not enough for the district court merely to recite or summarize testimony presented at trial to satisfy the requirement that findings of fact be stated with sufficient specificity. *Haroldson v. Haroldson*, 2012 ND 44, ¶ 20, 813 N.W.2d 539. Rather, specific findings explaining how the statutory factors apply in the case are required. *Id.* We also have stated:

> "Under N.D.R.Civ.P. 52(a), a district court trying an action upon the facts without a jury 'must find the facts specially.' A district court's findings of fact must be sufficient to enable an appellate court to understand the factual determinations made by the district court and the basis for its conclusions of law. 'A district court's "findings of fact ... should be stated with sufficient specificity to assist the appellate court's review and to afford a clear understanding" ' of the court's decision. A district court's findings are adequate if this Court can discern from them the factual basis for the district court's decision."

*Niska v. Falconer*, 2012 ND 245, ¶ 10, 824 N.W.2d 778 (quotations omitted).

[¶ 10] Here, the district court issued a memorandum opinion and order adopting the findings of fact and conclusions of law submitted by Dosch. The district court's memorandum opinion recognized short-

comings in the findings of fact and conclusions of law, stating:

"Even though the proposed Findings of Fact, Conclusions of Law, and Order for Judgment do not specifically set out the factors in 14–09–06.2, N.D.C.C., those documents are in enough detail, and can be read to have addressed the factors, for the Court to make a finding that the best interests and welfare of the children would be for Helen to have primary residential responsibility."

[¶ 11] Regarding primary residential responsibility, the district court found:

"PARENTAL RESPONSIBILITY. HD will be graduating from high school in the spring of 2013; she is already age 18. LD is in ninth grade and has stability with remaining in the marital home. The children have jobs. Helen was awarded primary residential responsibility in the Interim Order. The children have been doing fine and they have been flourishing since the Interim Order in February 2012.

"Pursuant to the Interim Order, when Kurt was allowed parenting time with the children of overnight every other weekend at his apartment, he did not have the children there overnight; not even once. Kurt has never had the children overnight for parenting time since February 2012. Kurt did not make any effort to make his apartment family friendly.

"Although Kurt took his girlfriend . . . on a vacation to Las Vegas in August 2012, he did not take the children on vacation out of the state. Helen took the children on a ski trip to their condo in Montana. Helen took HD to tour colleges. Helen is the one who created the children's holidays and made them special. She created family time. It was clear from the testimony that Helen did most of the traditionally female household tasks, with the help from a nanny.

"Kurt was ordered to pay family support and child support pursuant to the Interim Order. However, he did not make any child support payments until after an income withholding order was entered in June 2012. Kurt did not make *any* payments of family support pursuant to the Interim Order either. Kurt continues to be in arrears for child support and family support. A Money Judgment of $140,005.44, plus interest at the rate of six and one-half percent (6.5%) per annum, was entered against him. Kurt has not paid or attempted to pay any family support for the months of September or October 2012 (after entry of the Money Judgment).

"Helen has looked for medical employment positions in Bismarck, North Dakota. New medical employment could be a possibility for Helen as Sanford Health will be opening a facility in the Bismarck area.

"Two of the parties' children have diabetes. Kurt contends that he did the majority of the diabetes control for the children, yet during cross-examination he admitted that his oldest son was in an out-of-state boarding school for nearly three years; this was from 2005 to 2008. That testimony would indicate that Kurt did not do the majority of that child's diabetes control for those three years.

"Kurt and Helen employed nannies who assisted them throughout the years. Helen was the party who hired the nannies. The last two nannies have been Registered Nurses. The current nanny is a Registered Nurse and testified at court that she cares for the children when Helen is unavailable. It was clear from Kurt's notes to the nanny that he thought [the oldest son] would be able to take care of the two younger children.

[The oldest son] has had difficulties of his own. The nanny assists in getting [the oldest son] up in the morning. It is best to have an adult present with teenagers. Helen purchases the groceries for the family, cooks for the family, freezes meals, and transports the children. Helen is the parent who has secured the nanny to be with the children when she is unable to be with them.

"Kurt's whereabouts have been somewhat a mystery. His work schedule (which was submitted to court as an exhibit) clearly shows that during points of time he has been working overnights, long days, and on weekends at St. Alexius. Kurt would disappear at times. Kurt also traveled to Florida, Tennessee and elsewhere to establish the vitamin company and to be at the Tennessee spa. Kurt's girlfriend ... accompanied him on some of these trips. Pursuant to N.D.C.C. § 14–09–06.2 factor j, 'Evidence of domestic violence,' Helen did commit domestic violence upon Kurt in June 2011 when she discovered Kurt with [his girlfriend at a friend's] home. Helen did not use a dangerous weapon, Kurt did not sustain any serious bodily injury accordingly, and there is no pattern of domestic violence by Helen.

"The children need stability and someone they can count on; this is Helen. The court has considered the best interest factors and finds that the children are doing well in Helen's care and it is in their best interests to remain in the marital home with Helen. Helen is awarded primary residential responsibility. The court has considered N.D.C.C. § 14–09–06.2. The factors have been addressed and the court finds that the best interests and welfare of the children would be for Helen to have primary residential responsibility."

[¶ 12] Except for the brief reference to the domestic violence factor, the district court never identified any of the best interest factors in its findings. Rather, the court's findings appear to be a summarization of evidence supporting Dosch's position. At the end of the summarization, with no discussion of individual factors or explanation of which factors favored which party, the court concluded that "[t]he court has considered N.D.C.C. § 14–09–06.2" and "[t]he factors have been addressed." No discussion exists of evidence favoring Datz, and no recognition exists that some of the best interest factors undoubtedly would have favored him. In short, the findings are a recitation of facts, not placed in context or correlated to specific factors, and do not include an explanation of how the statutory factors apply in this case. *See Haroldson*, 2012 ND 44, ¶ 20, 813 N.W.2d 539.

[¶ 13] Particularly troublesome is a failure to acknowledge several facts favoring Datz. For example, the effect Dosch's unusual employment situation had on the children was not addressed. While Datz lived and worked in Bismarck and would have been able to personally live with the children in the marital home in Bismarck, Dosch worked in Fargo and spent at least half of her time there, some months staying up to 22 days. In effect, the children were being cared for and raised by a nanny more than half of the time. This issue was not addressed in the findings, despite the relevance these facts had to factors (a), (b), (c), (d) and (h). While the district court did find that Dosch was working in Fargo and spent most of her time there while the nanny cared for the children and that she had looked for medical employment in Bismarck, it did not explain how that favored Dosch when she has been working in Fargo since 2006 and the potential for permanent employment in Bis-

marck was, in the court's words, only "a possibility."

[¶ 14] The findings also fail to account for the fact the two minor children, ages 18 and 15 at the time of trial, expressed dissatisfaction with a nanny and the current custodial situation and expressed a preference to live with Datz. The district court did not address this issue under factor (i).

[¶ 15] Datz also presented evidence of several incidents when Dosch inflicted domestic violence upon him. In the most serious incident, Dosch trespassed into a home where Datz was visiting and struck and scratched him, kicked walls and broke items. The homeowner called the police, and Dosch was arrested, charged and briefly jailed. Datz also presented evidence that, in another incident, Dosch confronted him in a hallway in his apartment building, scratched him, held him by his shirt until he had to slip out of the shirt in order to get away from her and then chased him to his apartment. Datz also testified Dosch "frequently" had punched him in anger.

[¶ 16] The district court's findings of fact regarding domestic violence, in their entirety, state:

> "Pursuant to N.D.C.C. § 14–09–06.2 factor j, 'Evidence of domestic violence,' Helen did commit domestic violence upon Kurt in June 2011 when she discovered Kurt with [his girlfriend at a friend's] home. Helen did not use a dangerous weapon, Kurt did not sustain any serious bodily injury accordingly, and there is no pattern of domestic violence by Helen."

[¶ 17] When evidence of domestic violence exists, the district court "must make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption" under N.D.C.C. § 14–09–06.2(1)(j). *Smith v. Martinez*, 2011 ND 132, ¶ 18, 800 N.W.2d 304 (quotation omitted); *Boeckel v. Boeckel*, 2010 ND 130, ¶ 16, 785 N.W.2d 213. The findings must be sufficiently detailed to allow this Court to understand the basis for its decision. *Smith*, at ¶ 18; *Boeckel*, at ¶ 16. When the district court finds a party has committed domestic violence, it must make specific and detailed findings regarding the applicability of the presumption. *Boeckel*, at ¶ 19. If the findings do not sufficiently explain the district court's reasoning "for not applying the rebuttable presumption against awarding custody to the perpetrator of domestic violence, [this Court] cannot adequately review [the] decision." *Smith*, at ¶ 18 (quotation omitted).

[¶ 18] Here, the district court's findings address only one incident and contain no specific or detailed findings regarding that incident. The finding parrots the language of the statute and notes that Dosch did not use a dangerous weapon, that Datz did not sustain serious bodily injury and that no pattern of domestic violence was established. Yet, the findings do not address the other incidents of domestic violence. Nor do the findings provide sufficient specificity and detail to allow this Court to determine the basis for the court's decision. Furthermore, even if the evidence of domestic violence does not trigger the presumption, the violence is considered as one of the factors in deciding primary residential responsibility. *See, e.g., Zuger v. Zuger*, 1997 ND 97, ¶ 26, 563 N.W.2d 804. When credible evidence of domestic violence exists, it "dominates the hierarchy of factors to be considered" when determining the best interests of the child under N.D.C.C. § 14–09–06.2. *Wessman v. Wessman*, 2008 ND 62, ¶ 13, 747 N.W.2d 85; *see also Lawrence v. Delkamp*, 2000 ND 214, ¶ 3, 620 N.W.2d 151.

[¶ 19]   Based on our review of the findings of fact and the record, we conclude the district court's findings of fact on primary residential responsibility are not sufficiently specific and detailed to allow this Court to understand the basis for its decision.   We reverse the judgment and remand for findings on the best interest factors as required by law.

[¶ 20]   Affiliated with Datz's argument on primary residential responsibility, he claims the district court erred awarding Dosch as the minor children's primary caretaker and then requiring him to pay half of the cost of a nanny to watch the children when Dosch is away from home between 18 and 22 days a month.   Because we reverse the award of primary residential responsibility, this issue also must be addressed by the district court on remand.

### III

[¶ 21]   Datz argues the district court erred in determining property values and distribution.   "A district court's valuation of property is a finding of fact and will only be reversed on appeal if it is clearly erroneous."   *Dronen v. Dronen*, 2009 ND 70, ¶ 23, 764 N.W.2d 675.   "A district court's valuation of property is presumed correct."   *Id.* (quotation omitted).   "We view the evidence presented in the light most favorable to the district court's findings of fact."   *Id.*   "When the district court's valuation is within the range of evidence provided by the parties, the district court's valuation will not be set aside, unless this Court has a definite and firm conviction a mistake has been made."   *Id.* (quotation omitted).

### A

[¶ 22]   Datz challenges the district court's valuation of the East Interstate Building owned by the parties.   He concedes both parties testified about the building's value but claims his opinion of value was superior because he explained the basis for his valuation and Dosch did not.   "An owner of real property may testify as to the value of the land without any further qualification or special knowledge."   *Eberle v. Eberle*, 2010 ND 107, ¶ 17, 783 N.W.2d 254.   "The 'district court is in a better position than this Court to judge the credibility and observe the demeanor of witnesses and to determine property values.'"   *Id.* (quotation omitted).   The district court adopted Dosch's valuation of the business after finding:

> "Neither party gave a good accounting of what the building is worth.   The parties greatly differ regarding the value of this property.   It appears that Aspen Group may have an interest in selling it.   Given the credibility issues in this case, the court will adopt Helen's value of $900,000."

The value was within the range of evidence, and we are not left with a definite and firm conviction a mistake was made in utilizing the valuation testified to by Dosch.   We affirm the district court's valuation of this asset.

### B

[¶ 23]   Datz claims the district court erred in finding the value of medical equipment and office supplies owned by the parties.   The parties' testimony on valuation of these assets was widely divergent, with Datz setting their worth at $15,000 and Dosch claiming a value of $486,286.   The district court stated, "It is difficult for the court to determine the actual value of the medical equipment as many things are missing.   No current list was provided to Helen or the court."   The district court also found, "Kurt's value of $15,000 is not credible."   Ultimately, the district court valued the supplies and equipment at $243,143.05, which is within

the range of evidence. *Dronen*, 2009 ND 70, ¶ 23, 764 N.W.2d 675. We affirm this finding.

### C

[¶ 24] Datz argues the district court's valuations of the businesses Kurt G. Datz, D.O., P.C.; Bismarck Medical Spa and Tennessee Medical Spa were clear error. Again, both parties testified about the value of these assets. The district court's finding was within the range of evidence. The district court also found some of these businesses were closed when they and their equipment could have been sold, making valuation difficult. The district court is in the best position to make such difficult valuation decisions and we affirm.

### D

[¶ 25] We note that, with reversal of the district court's determination of primary residential responsibility, the issue of child support and payment of the nanny expenses could change. We have recognized that all "financial determinations in a divorce [action] are interrelated and may not be considered in a vacuum." *Moilan v. Moilan*, 1999 ND 103, ¶ 34, 598 N.W.2d 81. Thus, on remand the district court may reassess and modify the support and property division determinations.

### IV

[¶ 26] Datz argues the district court erred in determining he committed marital waste. A determination of economic or non-economic fault is a finding of fact, subject to the clearly erroneous standard of review. *See Halvorson v. Halvorson*, 482 N.W.2d 869, 871 (N.D. 1992) ("A majority of this court has held that fault, whether economic or non-economic, is a relevant factor in division of marital property. A party's dissipation of marital assets is a particularly relevant factor in arriving at an equitable distribution of the property." (citations omitted)).

[¶ 27] Here, the district court found Datz was at fault, stating:

"The size of the award given to one spouse being proportionate to the misconduct of the other is something this court is supposed to find. There already is a judgment against Kurt for his failure to pay child support and family support when ordered to do so. Instead of paying these obligations, he did such things as pay for laser repairs of $2,500. He also kept operating the Tennessee office and he flew there. Kurt was cashing checks for cash. Kurt simply has not been truthful to the court. Kurt has deleted information from his discovery as evidenced by the exhibits presented at trial. Kurt did not supply an inventory of the medical equipment, nor did he divulge where it was at or his approximate valuation of each item. The Joint Rule 8.3, NDROC, Property and Debt List does not list where the property is located. Kurt only states it is worth a mere $15,000. There has been fault in the breakdown of this marriage and the fault lies with Kurt Datz.

"It has been very difficult for the court and for Helen to have a meaningful representation of' this dissolution action due to Kurt's actions. Kurt has been generally deceitful with the court and Helen, as the court found in June 2012. He has hidden assets and disposed of assets. The distribution of assets and debts is made accordingly."

We conclude the district court's findings of fault are supported by evidence in the record, and we are not left with a definite and firm conviction a mistake was made.

### V

[¶ 28] Datz claims the district court erred granting Dosch a divorce on

the grounds of adultery. A divorce may be granted in North Dakota for adultery and six other enumerated grounds. N.D.C.C. § 14–05–03. "Adultery is the voluntary sexual intercourse of a married person with a person other than the offender's husband or wife." N.D.C.C. § 14–05–04. "The determination of fault grounds in a divorce is a finding of fact." *Routledge v. Routledge,* 377 N.W.2d 542, 544 (N.D.1985). Even without direct evidence that Datz had voluntary sexual intercourse with a person other than Dosch, the district court is permitted to draw reasonable inferences from evidence admitted at trial. *Paulson v. Paulson,* 2010 ND 100, ¶ 16, 783 N.W.2d 262 ("A choice between two permissible views of the evidence is not clearly erroneous if the [district] court's findings are based either on physical or documentary evidence, or inferences from other facts, or on credibility determinations.") (quotation omitted). Here, the district court heard testimony about Datz's "affairs" or "relationships" with women other than Dosch, including one of lengthy duration and involving expensive gifts and out-of-state travels. The evidence supports a finding Datz committed adultery. The district court's finding was not clearly erroneous and we affirm.

## VI

[¶ 29] We affirm in part, reverse in part and remand for further proceedings.

[¶ 30] GERALD W. VANDE WALLE, C.J., DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ, concur.

MARING, Justice, concurring and dissenting.

[¶ 31] I concur in parts III and V of the majority opinion.

[¶ 32] With regard to part IV of the majority opinion, I concur in the majority opinion's conclusion that the trial court's findings of both economic and non-economic fault of Datz are supported by the evidence and not clearly erroneous. However, I continue to be of the view that non-economic fault that does not impact the marital estate or does not impact the economic status of the parties should not be considered in property distribution. *Rebel v. Rebel,* 2013 ND 116, ¶ 26, 833 N.W.2d 442 (Maring, J., concurring). The present case is unusual in that it was not tried on the grounds of irreconcilable differences, but on the grounds of adultery. In addition, there is overwhelming evidence in this divorce that Datz committed economic waste by spending marital funds on his girlfriend for jewelry and trips and the trial court concluded "[Dosch] should be compensated for [Datz's] economic misconduct in the amount of $50,000."

[¶ 33] I respectfully dissent from part II of the majority opinion. I would affirm the trial court's finding that the best interest and welfare of the children would be for Dosch to have primary residential responsibility. The trial court spent two and a quarter pages addressing the best interest factors set forth in N.D.C.C. § 14–09–06.2(1). The majority opinion quotes the findings of the trial court verbatim in paragraph 11 of its opinion, but never the best interest factors. The best interest factors are:

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. . . .

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

N.D.C.C. § 14–09–06.2(1)(a)–(m). Applying these factors to the findings of the trial court, it is clear the trial court made findings specifically on factor a, the love, affection and other emotional ties between parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance; factor b, the ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment; factor c, the child's developmental

needs and the ability of each parent to meet those needs, both in the present and in the future; factor d, the sufficiency and stability of each parent's home environment, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community; factor (f), the moral fitness of the parents, as that fitness impacts the child; factor j, evidence of domestic violence; and factor k, the "interaction and interrelationship ... of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests"; and factor m, any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute. With regard to factor m, the trial court found "[Datz's] whereabouts have been somewhat a mystery. His work schedule (which was submitted to [the] court as an exhibit) clearly shows that during points of time he has been working overnights, long days and on weekends at St. Alexius. Kurt would disappear at times." The trial court concluded: "[t]he children need stability and someone they can count on; this is Helen [Dosch]." Additionally, the trial court found: "[Datz] simply has not been truthful to the court"; and "[Datz] has been generally deceitful with the court and [Dosch]."

[¶ 34] This Court has never held that the trial court must address every piece of testimony and evidence. What this Court has said is that in deciding primary residential responsibility the trial court must decide on the best interests and welfare of the children and must consider all of the factors under N.D.C.C. § 14–09–06.2(1). *Reeves v. Chepulis*, 1999 ND 63, ¶ 10, 591 N.W.2d 791. Here, the trial court specifically stated its findings did not specifically set out the factors in N.D.C.C. § 14–09–06.2(1), but it believed there was enough

detail to have addressed the factors. The trial court's statement indicates to me that it "considered all the factors."

[¶ 35] Our Court, additionally, has stated "a separate finding is not required for each statutory factor," and "the court's findings should be stated with sufficient specificity so that we can understand the factual basis for its decision." *Id.* I am of the opinion the trial court's findings are stated with sufficient specificity for this Court to understand the factual basis for its opinion. Further, the only child remaining a minor is K.D., who is now 17 years of age. Remanding this case back to the trial court for findings to be categorized under each factor heading is form over substance in this case.

[¶ 36] Finally, I disagree with the majority's analysis of domestic violence in this context. The trial court found that the domestic violence evidence did not rise to the level of the rebuttable presumption: use of a dangerous weapon, one incident that resulted in serious bodily injury or a pattern of domestic violence within a reasonable time proximate to the proceeding. *See* N.D.C.C. § 14–09–06.2(1)(j). The trial court held: "[Dosch] did not use a dangerous weapon, [Datz] did not sustain any serious bodily injury accordingly, and there is no pattern of domestic violence by [Dosch]." In *Reeves,* this Court held: "[Karen Chepulis] argues, however, a trial court must make specific factual findings even when the evidence of domestic violence does not rise to the level of triggering the presumption, and the trial court's failure to do so compels reversal. We disagree." 1999 ND 63, ¶ 13, 591 N.W.2d 791. "When a trial court addresses whether or not evidence of domestic violence triggers the presumption under N.D.C.C. § 14–09–06.2(1)(j), we require the court to make specific and detailed findings regarding the effect the allegations of domestic

violence have on the presumption." *Id.* at ¶ 14. Our Court held: "While the trial court failed to specifically address the allegation in its factual findings, we do not require a separate finding for each statutory factor under N.D.C.C. § 14–09–06.2 provided we can understand the factual basis for the court's decision." *Id.* at ¶ 16. Here, the majority opinion recites testimony of Datz that Dosch "frequently" had punched him and Dosch had confronted Datz in a hallway and scratched him; however, the trial court made several findings that Datz was not credible on numerous matters and had not been truthful to the trial court. The one incident of domestic violence discussed by the trial court was confirmed by law enforcement and an eye witness. I can understand the basis of the trial court's decision.

[¶ 37] I conclude the trial court's finding that the best interests of the children would be best served by awarding Dosch primary residential responsibility is clearly not erroneous, and I would affirm.

[¶ 38] MARY MUEHLEN MARING.