2013 ND 132

In the Interest of N.C.M., D.C.M., and J.J.M.

Micah Green, the parent and natural guardian of N.C.M., D.C.M., and J.J.M. and the Grand Forks County Social Service Board, Assignee for Micah O. Green, Plaintiffs

Micah Green, the parent and natural guardian of N.C.M., D.C.M., and J.J.M., Appellant

v.

Christopher Morrissey, Defendant and Appellee

and

State of North Dakota, Department of Human Services, statutory real party in interest, Respondent.

No. 20120266.

Supreme Court of North Dakota.

July 18, 2013.

DeWayne A. Johnston, Grand Forks, N.D., for plaintiff and appellant.

Sara R. Behrens, Grand Forks, N.D., for defendant and appellee.

MARING, Justice.

[¶ 1] Micah Green appeals from a fourth amended judgment and from an order denying her post-judgment motions to amend the trial court's findings, to make additional findings, for a new trial, and for a stay of the judgment. We conclude the trial court did not clearly err in awarding primary residential responsibility of the parties' minor children to the father, Christopher Morrissey; that the court did not misapply the law in admitting certain evidence; and that the court did not clearly err in its award of parenting time to Green. We affirm.

I

[¶ 2] Green and Morrissey are the parents of D.C.M. and N.C.M., both born in 2006, and J.J.M., born in 2007. Although Green and Morrissey were living together when their children were born, they were never married to each other and separated in about May 2008. In December 2008, the trial court entered a third amended judgment awarding Green primary residential responsibility for the parties' three children and setting a parenting time schedule, giving Morrissey parenting time every other weekend and providing an alternating holiday schedule. The judgment also provided that when a parent was unable to care for the children for more than two nights, the parent was to allow the other parent to care for the children before contacting a third party. In January 2010, Green had another child, P.K., with her fiancé Ron Kaiser with whom she was then living.

[¶ 3] Since the entry of the third amended judgment, Green had been investigated by Grand Forks County Social Services on three occasions and three Child Protection Service Assessment Reports were generated. The first assessment report was generated after suspected child abuse/neglect was reported in January 2009. Although no services were required, the social services team recommended "services based upon risk for psychological maltreatment would be beneficial to Micah and the children," due to Green's drug use and recent incarceration. During her incarceration in January 2009, Green did not allow Morrissey the opportunity to care for the children, but rather her father and her fiancé watched the children.

[¶ 4] A second assessment report was generated after a report was made to social services on January 27, 2010, that Kaiser had injured N.C.M. Although services again were not required, Social Services recommended services as the "use of illegal drugs and failure to consistently address her mental health put the children at risk of psychological maltreatment." The third assessment report was generated after it was reported on June 7, 2010, that Green had been using drugs, was overwhelmed with her life, and threatened to hurt one of the children. Services were required at this point based on Green's psychological maltreatment of the children due to caregiver capacity concerns.

[¶ 5] In September 2010, Morrissey filed a motion for modification of primary residential responsibility on grounds that the children's present environment jeopardized their physical and emotional health,

alleging in part that Green had continued to abuse drugs since entry of the prior judgment resulting in her incarceration and inability to care for the children; that Green had attempted to commit suicide in March 2010 leading to police intervention; that Green had been investigated by Grand Forks County Social Services three times since entry of the judgment; and that Social Services had recommended Green seek counseling for her drug use and psychological issues, had required services for Green and referred the matter to juvenile court. Green opposed Morrissey's motion.

[¶ 6] In an October 2010 order, the trial court found Morrissey had established a prima facie case and ordered an evidentiary hearing be held. In March 2011, Grand Forks Social Services removed the children from Green under emergency circumstances and placed them with Morrissey. In separate juvenile court proceedings, the children were found to be deprived in an April 2011 order while in Green's care. Green continued to work with Grand Forks Social Services to transition the children back to her, and in October 2011, the children were returned to Green. In December 2011, the court held a bench trial on Morrissey's motion, during which, including the parties, six witness testified on behalf of Green, twelve witnesses testified on behalf of Morrissey, and nineteen exhibits were offered into evidence.

[¶ 7] In January 2012, the trial court issued its memorandum decision and order granting the motion, awarding Morrissey primary residential responsibility for the three children and granting parenting time to Green. After entry of the fourth amended judgment in February 2012, Green moved the trial court to amend the findings, to make additional findings, for a new trial, and for a stay of the judgment. The court denied Green's motions.

II

[¶ 8] Green initially argues the trial court erred as a matter of law in granting the evidentiary hearing on Morrissey's motion for modification of primary residential responsibility because he failed to establish a prima facie case. In this case, the third amended judgment awarding Green primary residential responsibility of the parties' three children was entered in December 2008, and Morrissey filed his motion for modification of primary residential responsibility in September 2010.

[¶ 9] Section 14–09–06.6, N.D.C.C., governs the post-judgment modification of primary residential responsibility. When a party moves to modify residential responsibility within two years after an order establishing residential responsibility, a stricter or more rigorous modification standard applies. *See* N.D.C.C. § 14–09–06.6(5); *Laib v. Laib*, 2008 ND 129, ¶ 8, 751 N.W.2d 228. To obtain an evidentiary hearing on a motion for modification of primary residential responsibility, the party seeking the modification must first establish a prima facie case under N.D.C.C. § 14–09–06.6(4). However, "any issue regarding the evidentiary basis for a court's decision that a prima facie case has been established under N.D.C.C. § 14–09–06.6(4) is rendered moot once the evidentiary hearing is held." *Kartes v. Kartes*, 2013 ND 106, ¶ 18, 831 N.W.2d 731; *see also Smedshammer v. Smedshammer*, 2013 ND 107, ¶ 1, 2013 WL 3063985.

[¶ 10] Here, the trial court held a bench trial on Morrissey's motion for modification of primary residential responsibility in December 2011. Because the court held a full evidentiary hearing on Morrissey's motion, the issue regarding whether the court erred in granting the hearing under N.D.C.C. § 14–09–06.6(4) is moot,

and we decline to address Green's claim the court erred in deciding Morrissey established a prima facie case.

## III

[¶ 11] Green alleges the trial court clearly erred in its award of primary residential responsibility for the parties' minor children to Morrissey.

[¶ 12] The trial court may not modify a prior custody order within the two-year period unless it first makes an appropriate finding that one of the factors under N.D.C.C. § 14–09–06.6(5) has been met:

> The court may not modify the primary residential responsibility within the two-year period following the date of entry of an order establishing primary residential responsibility unless the court finds the modification is necessary to serve the best interest of the child and:
>
> a. The persistent and willful denial or interference with parenting time;
>
> b. The child's present environment may endanger the child's physical or emotional health or impair the child's emotional development; or
>
> c. The residential responsibility for the child has changed to the other parent for longer than six months.

*See also* N.D.C.C. § 14–09–06.6(3).

■ [¶ 13] "The trial court must award primary residential responsibility to the parent who will better promote the child's best interests." *Hammeren v. Hammeren*, 2012 ND 225, ¶ 6, 823 N.W.2d 482; *see also Seay v. Seay*, 2012 ND 179, ¶ 5, 820 N.W.2d 705. In considering the child's best interests, the court must consider all the relevant factors under N.D.C.C. § 14–09–06.2(1)(a)–(m):

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence....

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child

with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

[¶ 14] "Although a separate finding is not required for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Wolt v. Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786. The trial court's decision whether to change primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review. N.D.R.Civ.P. 52(a); *Hammeren*, 2012 ND 225, ¶ 7, 823 N.W.2d 482. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *Hammeren*, at ¶ 7. This Court will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute its judgment for the trial court's decision merely because this Court may have reached a different result. *Id.* at ¶ 8.

[¶ 15] Here, the trial court specifically found "the children's present environment may endanger the children's physical and emotional health or impair the children's emotional development." *See*

N.D.C.C. § 14–09–06.6(3)(b), (5). The court found that although Green had taken steps to improve herself, she had a "poor and spotty record," did not get a recommended parent assessment until over a year after it was recommended, refused to complete assessment tools for the assessment, and had shown a consistent reluctance to follow policies and directives. The court found that during Green's supervised parenting time with the children, she would not follow rules regarding the parenting time. The court found that Green refused to follow through with certain visitation after agreeing to it through mediation and that Green felt resentment toward the children's grandmother who helped one child get into Head Start early, rather than seeing the benefit for the child. The court also found that the children's swearing was "very problematic" in that it was likely coming from Green's fiancé calling her names. The court found that Green did not even seem to be able to get the children to consistently wear underwear. The court then considered the best-interest factors in finding that the children's emotional and physical health required primary residential responsibility be given to Morrissey.

[¶ 16] The trial court found that factor (a) was neutral in that both of the parents love their children equally. However, the court found factors (b), (c), (f), (g), (h), and (k), favored Morrissey, while factors (i), (j), (*l*), and (m) were not applicable. The court found factors (d) and (e) favored neither Green or Morrissey. Specifically, under best interest factors (a), (b), (c), and (d), respectively, the trial court found that although both parents loved their children equally, Morrissey was better able to provide for the children's educational needs and the daily needs for proper clothing and necessities, and while they were with Green, the children had not had a stable

environment and been found to be deprived in her care.

[¶ 17] The trial court found Morrissey's mother was a stabilizing influence with the children under factor (e). Under factor (f), regarding moral fitness, the court found a recorded telephone conversation with a jail inmate, in which Green talks about smuggling drugs into the jail and getting high, "problematic." Under factor (g), the court found both parties were relatively healthy physically, but that Green had psychological diagnoses limiting her ability to function and care for the children. Under factor (h), the court found most of the evidence from school teachers or program people indicated the children did better with Morrissey. Under factor (k), the court found that Morrissey's mother provided "additional stability," but that Green's fiancé, with whom she lives, engaged in conduct which was having a negative effect on the children.

[¶ 18] In analyzing the best interest factors, the trial court considered the witnesses' testimony, including testimony of Grand Forks County social workers, and made specific findings of fact on the best interest factors. The court also relied on the testimony of a former Grand Forks Police Officer that responded to a call in March 2010, in which Green was suicidal, highly agitated, and yelling and crying. The officer testified that Green said she was coming down from a "meth high," shouting she wanted to kill herself, and had a 1/8 inch deep wound on her wrist. The court also considered Green's own testimony, in which she admitted she had used drugs "sporadically" from June 2010 to March 2011, but had not used drugs since Social Service removed the children from her care in March 2011.

[¶ 19] The trial court concluded that the evidence indicated there had been a significant change of circumstances since the entry of the last decree and Green's life had been very unstable and she has not been able to adequately care for the children. The court specifically found allowing the children to remain with Green would endanger the children's emotional health and impair the children's emotional development. The court further found the children's best interests require primary residential responsibility be with Morrissey. The court in its memorandum decision also noted that Green has had multiple problems emotionally, psychologically, and legally; that she had been in and out of jail; and that she had been in and out of treatment.

[¶ 20] Green argues that the trial court misapplied the law by failing to maintain stability with the custodial parent. Green argues that the court did not properly weigh the best interest factors in light of the fact that the children had lived their entire lives with her and she was their primary caregiver against the struggles of moving to a new home and new school. Green further argues that the court's findings in the best interest analysis were not supported by the record. However, the trial court specifically found that the children had not had a stable environment and that Green's life had been unstable and she had not been able to adequately care for the children. There is also testimony supporting that Green had difficulty handling all four children at once.

[¶ 21] Further, since the entry of the prior judgment establishing primary residential responsibility, Green has attempted suicide, "sporadically" used drugs, and spent time in jail. There is testimony that the children had more behavioral problems when they were with Green and a Social Services worker was concerned about Green's care of the children and her mental health stability and recovery. Green testified to her sporadic drug use and that

she did not realize she had a problem until the children were removed from her care. There is evidence in the record of inappropriate behavior by the children while in her care and bad language used by the children toward Green during supervised visitation. Based on this record, we conclude that the trial court did not err in balancing the best-interest factors against maintaining custody with Green.

[¶ 22] Green argues that the trial court did not properly weigh the best interest factors. Green argues that the district court erred in its findings under factors (b), (c), (d), (e), (f), (g), (h), (k), and (*l*). Green argues that the evidence does not support the trial court's findings, that the trial court erred in failing to find a nexus between the children's present environment and how the children were affected by alleged dangers of their environment, and that the trial court erred in finding the children's present environment endangers their physical or emotional health or impairs their emotional development. Nonetheless, as discussed, the trial court considered the witnesses and reviewed the evidence, and we will not reweigh the evidence presented by the parties, nor will this Court reweigh the credibility of the witnesses. *See Kartes*, 2013 ND 106, ¶ 36, 831 N.W.2d 731. "Our review of the [trial] court's findings of fact is guided by the clearly erroneous standard, and a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, although there is some evidence to support it, on the entire record we are left with a definite and firm conviction a mistake has been made." *Id.* Based on our review of the record, we conclude there is ample evidence supporting the trial court's findings of fact, and the findings are not clearly erroneous.

## IV

[¶ 23] Green argues the trial court misapplied the law by admitting certain evidence. Generally, in reviewing decisions to admit evidence, we apply an abuse of discretion standard. *In re J.S.L.*, 2009 ND 43, ¶ 18, 763 N.W.2d 783. "The [trial] court abuses its discretion only when it acts in an arbitrary, unreasonable, or unconscionable manner, or when its decision is not the product of a rational mental process leading to a reasoned determination." *State v. Schmidkunz*, 2006 ND 192, ¶ 15, 721 N.W.2d 387.

## A

[¶ 24] Green argues the trial court misapplied the law by allowing Dr. Gregory Decker to testify as an expert and erred by admitting Micah Green's confidential medical/psychological records into evidence through Dr. Decker's report.

[¶ 25] Rule 702, N.D.R.Ev., deals with testimony by experts, providing: "If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." We have said that N.D.R.Ev. 702 "envisions generous allowance of the use of expert testimony if the witness is shown to have some degree of expertise in the field in which the witness is to testify." *In re J.M.*, 2013 ND 11, ¶ 11, 826 N.W.2d 315. "An expert need not be a specialist in a highly particularized field if the expert's knowledge, training, education, and experience will assist the trier of fact." *Id.* The trial court has broad discretion to determine whether a witness is qualified as an expert and whether the testimony will assist the trier of fact. *Id.*

[¶ 26] This Court has also said that expert witnesses may testify about "otherwise inadmissible hearsay on which they rely in order to establish the basis of their opinion." *In re W.J.C.A.*, 2012 ND 12, ¶ 11, 810 N.W.2d 327. We further explained:

> Experts are not entitled to "free reign to act as a mouthpiece for inadmissible hearsay evidence." [*Davis v. Killu*, 2006 ND 32, ¶ 10, 710 N.W.2d 118].... "A medical expert must often rely on second-hand information unless it is demonstrably unreliable." *In re P.L.P.*, 556 N.W.2d 657, 660 (N.D.1996) (citing N.D.R.Ev. 703; Fed.R.Evid. 703, Advisory Committee Notes). The Advisory Committee Notes to Fed.R.Evid. 703 provide:
>
>> [A] physician in his own practice bases his diagnosis on information from numerous sources and of considerable variety, including statements by patients and relatives, reports and opinions from nurses, technicians and other doctors, hospital records, and X rays.... The physician makes life-and-death decisions in reliance upon them. His validation, expertly performed and subject to cross-examination, ought to suffice for judicial purposes.

*In re W.J.C.A.*, at ¶ 11. In *In re W.J.C.A.*, this Court held that a licensed psychiatrist was qualified as an expert and his testimony about staff reports, along with his own observations, was proper to establish the basis of his medical opinion. *Id.*

[¶ 27] Here, although Dr. Decker was not a licensed psychologist at the time he conducted his parenting evaluation on Green, he testified that he was employed by Northeast Human Service Center as a psychologist. He also testified that he compiled the report, signing the report as a psychologist resident, and the report was also signed by another psychologist. Dr. Decker testified at the bench trial that he had a four-year undergraduate degree in psychology, and ten years of graduate work resulting in his doctorate in counseling psychology. He also testified that he had patient contact involving therapy, providing psychotherapy, conducting assessments, providing information and referrals and administering psychological testing during his graduate work. Dr. Decker testified he had extensive experience with administering psychological examinations, assessments, writing reports, and interpreting psychological assessments. We conclude that the district court did not abuse its discretion in permitting Dr. Decker to testify as an expert.

[¶ 28] Additionally, relying on N.D.R.Ev. 503(b) and N.D.C.C. § 31–01–06.4, Green argues the trial court erred in admitting Green's "confidential medical/psychological records" into evidence through Dr. Decker's parenting evaluation report.

[¶ 29] Green contends that after the trial court ruled in a pretrial order that her psychological records were privileged, the court allowed her psychological records in "through the back door" by admitting Dr. Decker's report, which was also signed by a licensed psychologist, into evidence over her objection. Green asserts the court relied on the report by citing to Green's specific privileged information. Green contends that the information was obtained from Green or her medical records at Northeast Human Services Center and should not have been relied upon as accurate because Dr. Decker did not make the diagnoses. Green argues the court committed an error of law by admitting the exhibit into evidence because it contained privileged psychological and medical records, making the parenting assessment highly prejudicial.

[¶ 30] Nonetheless, Dr. Decker testified that he performed the parenting evaluation of Green on October 7, 2010, to get a history from Green "to determine her understanding of parenting skills and to make a determination about whether or not she would be able to put those skills into effect." He testified that he compiled the report based on that evaluation. Although Green argues the court erred by admitting the parenting evaluation into evidence based on N.D.R.Ev. 503(b), in addition to federal law, restricting disclosure of drug and alcohol treatment records, we conclude that the parenting evaluation at issue is not a drug or alcohol treatment record. Green was allowed to cross-examine Dr. Decker regarding his assessment. We conclude the trial court did not abuse its discretion in admitting the report compiled by Dr. Decker. Additionally, although Green asserts federal law prohibits the admission of the parenting evaluation, Green did not argue to the trial court that its admission was prohibited on grounds of the specific federal law provisions cited on appeal. We will not address issues that were not raised in the lower court. *See State v. Tresenriter*, 2012 ND 240, ¶ 10, 823 N.W.2d 774; *In Interest of A.G.*, 506 N.W.2d 402, 403 (N.D.1993).

[¶ 31] We conclude the district court did not abuse its discretion by admitting Dr. Decker's parenting evaluation as an exhibit.

## B

[¶ 32] Green contends the trial court erred by not requiring Grand Forks County Social Services to provide full, nonredacted copies of the reports admitted into evidence.

[¶ 33] Green asserts that before the bench trial in this matter, she made a motion in limine requesting that the trial court not admit the Grand Forks Social Services reports into evidence because the reports were "largely redacted leaving huge voids in the information, the reports contain hearsay within hearsay, and it would be extremely prejudicial to [Green] to admit these reports." Nonetheless, the trial court heard arguments on the first day of the hearing and denied her motion concerning the reports, reasoning that the reports were prepared in the course of business. Green contends on appeal that the trial court failed to address the fact that they were redacted. To the extent that Green argues the trial court erred in admitting the reports based on the redactions, Morrissey responds that Green provided no legal basis for exclusion of the reports based on the redactions. Green replies that using the redacted reports as evidence, without disclosing the full report or verifying the information within the reports, was "highly prejudicial" because "it is essential to determine the competency of the reporting and source of information as may induce the court into making an improper finding."

[¶ 34] Although not raised or cited by Green, we note that N.D.R.Ev. 106 provides: "Whenever a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which in fairness ought to be considered contemporaneously with it." Rule 106, N.D.R.Ev., embodies the rule of completeness and is not "a rule of admissibility; rather, the rule deals with the order of proof to alleviate 'the misleading impression created by taking matters out of context' and addresses 'the inadequacy of repair work when delayed to a point later in the trial.'" *State v. Gibbs*, 2009 ND 44, ¶ 30, 763 N.W.2d 430 (quoting N.D.R.Ev. 106, Explanatory Note). "The rule embodies a standard of fairness." *Gibbs*, at

¶ 30. Under Rule 106, additional parts of a statement may be admitted if necessary to "(1) explain the admitted portion, (2) place the admitted portion in context, (3) avoid misleading the trier of fact, or (4) insure a fair and impartial understanding." *McCoy v. Augusta Fiberglass Coatings, Inc.*, 593 F.3d 737, 747 (8th Cir.2010) (quotations omitted). "It has no application where the party does not introduce the document into evidence or inquire into it." *Id.* A trial court has "broad discretion to conduct the trial in an orderly and efficient manner, and to choose among reasonable evidentiary alternatives to satisfy the rule of completeness." *Id.* Here, Green neither cited nor complied with N.D.R.Ev. 106, and we conclude Green's objection regarding admission of the reports based on redactions must fail.

[¶ 35] Additionally, relying on *In re J.S.L.*, 2009 ND 43, ¶ 20, 763 N.W.2d 783, Green also appears to argue the admission of the reports was an abuse of discretion based on hearsay within hearsay. In *In re J.S.L.*, at ¶ 20, we discussed *In re B.B.*, 2007 ND 115, ¶¶ 8–9, 735 N.W.2d 855, in which we held that child assessment reports contained "hearsay within hearsay" and such a "report was not admissible under the business records exception because of the presence of statements made by individuals who were not acting in the regular course of business, and because the person who prepared the report did not have personal knowledge of the events detailed in those statements." We noted, however, that such statements may be admissible under the public records exception in N.D.R.Ev. 803(8). *In re J.S.L.*, at ¶ 20 (citing *In re B.B.*, at ¶ 9). We then distinguished *B.B.* because the trial court in *J.S.L.* had relied on the residual exception in N.D.R.Ev. 807.

[¶ 36] In *In re J.S.L.*, 2009 ND 43, ¶ 24, 763 N.W.2d 783, however, we held

that while the report "may have been admissible under the combined force of the business records exception and the public records exception, the [trial] court's decision to admit the Report under the residual exception was an abuse of discretion." Nonetheless, we explained admission of the report was not reversible error:

However, this does not end our analysis on the issue, as we find that the admission of the CPA Report under Rule 807 was not reversible error. *See* N.D.R.Civ.P. 61 (setting forth rule on harmless error). In *Zimmerman v. Zimmerman*, 1997 ND 182, 569 N.W.2d 277, this Court considered the admission of a child abuse investigation report in a trial litigating the custody of a child. We began by noting that the report contained statements of persons other than the individual writing the report, were not made in court and not under oath, and were therefore hearsay and inadmissible. *Id.* at ¶ 12 (citing *Fuhrman v. Fuhrman*, 254 N.W.2d 97, 100 (N.D.1977)). *However, we observed that the introduction of allegedly inadmissible evidence in a non-jury case is rarely reversible error, and we would only reverse such a holding if "all the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." Id.* at ¶ 13 (quoting *Lithun v. Grand Forks Public School Dist. No. 1*, 307 N.W.2d 545, 550 (N.D.1981)). We further noted that the district court specifically stated it was not going to decisively rely on the investigation report in making its custody decision, and were therefore not convinced incompetent hearsay evidence induced the court to make an essential finding which the court would not have otherwise made

based upon additional, relevant admissible evidence in the case. *Id.* at ¶ 13. *In re J.S.L.*, at ¶ 25 (emphasis added). We were not convinced that incompetent hearsay evidence induced the trial court to make essential findings. *Id.* at ¶ 26.

[¶ 37] Here, Green has only raised vague and conclusory assertions in briefing this issue, providing only two paragraphs under this issue in her main brief. Green does not provide any analysis of how *J.S.L.* applies or differs from the present case, nor does she spell out how "all the competent evidence is insufficient to support the judgment or unless it affirmatively appears that the incompetent evidence induced the court to make an essential finding which would not otherwise have been made." *In re J.S.L.*, 2009 ND 43, ¶ 25, 763 N.W.2d 783. "[J]udges are not ferrets who engage in unassisted searches of the record for evidence to support a litigant's position." *Coughlin Const. Co., Inc. v. Nu–Tec Indus., Inc.*, 2008 ND 163, ¶ 9, 755 N.W.2d 867 (quotations omitted); *see also Hale v. State*, 2012 ND 148, ¶ 12, 818 N.W.2d 684 ("We have repeatedly stated we are not ferrets and we will not consider an argument that is not adequately articulated, supported, and briefed.") (quotations omitted). Therefore, to the extent the issue has been raised and briefed, we conclude the trial court did not abuse its discretion in admitting the Social Services reports.

### C

[¶ 38] Green argues the trial court erred by admitting the recording of a telephone call to an inmate in jail into evidence. An officer with the Grand Forks County Correctional Center testified that the call was recorded in March 2011 by the jail's recording system which monitors and records inmate telephone calls. Morrissey testified and authenticat-ed that it was Green's voice in the call with the inmate. In the recording with the inmate, Green talks about smuggling drugs into the jail and getting high on drugs. Green argues on appeal that the recording was presented to the trial court simply for "harassment purposes" and admitting the recording was "highly prejudicial" to Green and not relevant to this action. We disagree. We conclude the trial court did not abuse its discretion in admitting the recording into evidence at the hearing.

### D

[¶ 39] Green argues the trial court erred by allowing Morrissey's mother, Monica Morrissey, to testify as an expert. We conclude that Green's argument is without merit in that the court did not admit her testimony as an expert, but instead relied upon her testimony as a witness with first-hand knowledge.

### V

[¶ 40] Green argues the trial court erred in only granting her parenting time every other weekend.

[¶ 41] "In awarding [parenting time] to the non-custodial parent, the best interests of the child, rather than the wishes or desires of the parents, are paramount." *Bertsch v. Bertsch*, 2006 ND 31, ¶ 5, 710 N.W.2d 113. "We have stated [that parenting time] between a non-custodial parent and a child is presumed to be in the child's best interests and that it is not merely a privilege of the non-custodial parent, but a right of the child." *Hendrickson v. Hendrickson*, 2000 ND 1, ¶ 21, 603 N.W.2d 896. A non-custodial parent's parenting time may be "curtailed or eliminated entirely if it is likely to endanger the child's physical or emotional health." *Marquette v. Marquette*, 2006 ND 154, ¶ 9, 719 N.W.2d 321. The trial court's decision

on parenting time is a finding of fact, subject to the clearly erroneous standard of review. *Deyle v. Deyle*, 2012 ND 248, ¶ 17, 825 N.W.2d 245. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, upon review of the entire record, we are left with a definite and firm conviction a mistake has been made. *Bertsch*, at ¶ 5.

[¶ 42] Green contends the trial court erred in failing to consider that, except for a seven month period, the children had resided with Green for their entire lives and that Green had been the children's primary caregiver. Green argues the court erred in awarding a limited amount of parenting time and granting her parenting time only every other weekend without additional weekday or summer parenting time was not in the children's best interests. However, the fourth amended judgment allows for additional parenting time, providing for an alternating holiday schedule between the parties and permitting the parties to modify the schedule by written agreement. The judgment also states that "[i]n the event a parent is not able to care for the children during his or her parenting time for a period in excess of two consecutive overnights, the other parent shall be contacted and provided the opportunity to care for the children before third party arrangements are made."

[¶ 43] Based on our review of the record and the trial court's factual findings, the court's parenting time decision was not induced by an erroneous view of the law, evidence exists to support the decision, and we are not left with a definite and firm conviction a mistake has been made. We conclude the trial court's award of parenting time to Green is not clearly erroneous.

VI

[¶ 44] We have considered the remaining issues and arguments raised by the parties and find they are either unnecessary to our decision or without merit. We affirm the fourth amended judgment and the order denying Green's post-judgment motions.

[¶ 45] GERALD W. VANDE WALLE, C.J., DANIEL J. CROTHERS, DALE V. SANDSTROM, and CAROL RONNING KAPSNER, JJ., concur.