2013 ND 185
**Rick R. RUSTAD, Plaintiff and Appellant**

v.

**Svetlana RUSTAD, Defendant and Appellee.**
**No. 20130105.**

Supreme Court of North Dakota.

Oct. 22, 2013.

Rehearing Denied Nov. 21, 2013.

Leslie J. Aldrich (argued) and Joshua B.E. Nyberg (appeared), Fargo, N.D., for plaintiff and appellant.

Svetlana Rustad, Fargo, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶ 1]   Rick Rustad appeals from a district court judgment granting him a divorce from Svetlana Rustad, awarding primary residential responsibility of the parties' minor child to Svetlana Rustad, distributing their marital property, and

awarding Svetlana Rustad rehabilitative spousal support. We affirm the portion of the judgment awarding spousal support and distributing the marital property, but we reverse and remand on primary residential responsibility.

## I

[¶ 2] Rick and Svetlana Rustad were married in February 2008 and have one minor child together, a girl who was born in 2011. Svetlana Rustad is a permanent resident of the United States and a Russian citizen. The parties lived in Kindred during the marriage. Rick Rustad is self-employed and works as a software consultant. Svetlana Rustad has degrees in economics and law, which she obtained in Russia, and she was employed throughout the marriage until October 2012.

[¶ 3] In May 2012, Rick Rustad filed for divorce. A parenting investigation was completed and a report was filed with the court. The parenting investigator recommended Rick Rustad be awarded primary residential responsibility. After a trial, the district court granted the divorce, distributed the marital property, awarded Svetlana Rustad primary residential responsibility of the child, and ordered Rick Rustad pay child support. In distributing the marital property, the court awarded Rick Rustad the residence, various investment accounts, and other assets with a net value of $401,212. Svetlana Rustad was awarded a vehicle, jewelry, various bars of silver, and other assets with a net value of $41,316. The court also awarded Svetlana Rustad rehabilitative spousal support of $900 per month for six months.

## II

[¶ 4] Rick Rustad argues the district court's decision to award Svetlana Rustad primary residential responsibility of the parties' child is clearly erroneous. He claims the court's decision is not supported by the evidence, the court failed to make specific findings about the best interest factors in N.D.C.C. § 14–09–06.2, and the court failed to explain its rationale for awarding primary residential responsibility to Svetlana Rustad when its findings were in his favor.

[¶ 5] A court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Dieterle v. Dieterle*, 2013 ND 71, ¶ 6, 830 N.W.2d 571. A court's finding is clearly erroneous if there is no evidence to support it, it is induced by an erroneous view of the law, or we are convinced, based on the entire record, that a mistake has been made. *Id.*

[¶ 6] A district court must award primary residential responsibility to the party who will best promote the child's best interests and welfare. *Dieterle*, 2013 ND 71, ¶ 6, 830 N.W.2d 571. A court has broad discretion in making a determination of primary residential responsibility, but it must consider all of the relevant best interest factors under N.D.C.C. § 14–09–06.2(1). *Dieterle*, at ¶ 6. The court is not required to make specific findings on each best interest factor, but the court must consider all of the factors and make findings with sufficient specificity to enable our Court to understand the factual basis for its decision. *Fonder v. Fonder*, 2012 ND 228, ¶ 11, 823 N.W.2d 504. "It is not enough for the district court merely to recite or summarize testimony presented at trial to satisfy the requirement that findings of fact be stated with sufficient specificity." *Datz v. Dosch*, 2013 ND 148, ¶ 9, 836 N.W.2d 598. The court is required to make specific findings explaining how the statutory factors apply. *Id.* The court's findings are adequate if we can discern the factual basis for the court's

decision and the findings afford a clear understanding of the decision. *Id.*

[¶ 7] Here, the district court did not cite N.D.C.C. § 14–09–06.2(1) or specifically refer to any of the best interest factors by name; rather, the court found:

Since August, 2012, the parties have been operating on a temporary order concerning the care of the parties minor child.... Under this order, Rick has had parenting responsibility for [the child] every Monday from noon to every Thursday at noon. Svetlana has had parenting responsibility for [the child] every Thursday at noon through the following Monday at noon. At the time this arrangement was set up, Svetlana was working during the week and Rick had a flexible work schedule. This arrangement has allowed [the child] to consistently be with one of her parents. For the periods that Svetlana was at work during this arrangement, and not in her father's care, [the child] was cared for by [Svetlana's mother,] Tatiana. [The child] has done quite well during the parties' separation.

When [the child] is with her father, he reads to her, plays with her and her toys, and partakes in outdoor activities. Rick has chickens on his farmstead and has extended family living nearby. Between Rick's home, and the home of his siblings, there are various farm animals including chickens, cats, dogs, horses, and goats. By all accounts, [the child] enjoys all of the animals, helps feed the chickens, plays with the other animals, and enjoys her time with her father and his family at his country home. [The child] is eager to meet new people and enjoys visiting Rick's extended family.

Svetlana and [the child]'s grandmother, Tatiana, take excellent care of [the child] as well. Svetlana would like [the child] to be interested in music, takes her to the park, the zoo, and various Christmas programs.

Each parent provides a safe and suitable home for [the child] and both parents provide well for [the child]'s care and are concerned with her development, which is normal for her age.

In Svetlana's home, [the child] is exposed to the Russian language. [The child]'s grandmother also speaks French. Svetlana is also fluent in English.

Rick would like to see [the child] involved in swimming, 4H activities, roping classes and goat tying school. Rick would like [the child] to be able to experience horse shows, rodeos, and other sporting events. Svetlana would like [the child] to be involved in music and exposed to other cultural activities.

Both parties are good at providing a schedule for [the child]. Both parties have taken the Parents Forever course and seem quite dedicated to [the child]'s care.

Svetlana plans to stay in North Dakota and is actively seeking employment in the area. Svetlana has been critical of Rick's parenting. Rick has a more laid-back parenting style and Svetlana has a more protective parenting style. The parties have shared a parenting journal when they exchange [the child]. Svetlana keeps a detailed account of [the child]'s physical condition, what she eats, and when she goes to the bathroom. Rick's entries focus more on whether there have been any unusual issues with [the child], and the types of activities she was involved in while in his care.

Rick has pictures of Svetlana in his home and [the child] recognizes these pictures as her mother. Svetlana does not keep any pictures of Rick in her home and believes that her mother, Tati-

ana, should have higher priority for caring for [the child] than Rick.

Svetlana is Russian Orthodox. She would like to have [the child] in her care during Russian Orthodox holidays which include the Russian Orthodox Christmas, and Easter. She is agreeable with Rick having most traditional American holidays.

. . . .

An extensive parenting investigation was done in this case. Both parents do a good job in caring for [the child], however, Svetlana seems to be overly critical of Rick's care for the child. The present arrangement during the interim period provided "a nearly optimal schedule for [the child] at this point in her life" according to the investigator. The present schedule would need to be modified once [the child] is of school age. Continuation of the use of the parenting notebook to inform each parent of important information regarding [the child] is useful and desirable. Svetlana and her mother Tatiana blame Rick for [the child]'s every minor illness. Actually, [the child] is a very healthy child. Although the parties do not talk to each other at present, they have kept each other informed about [the child] by use of the parenting notebook. Both parties have complied with the interim order. [The child] has bonded well with both parents and their extended families. It is in [the child]'s best interest to continue the present parenting schedule.

[¶ 8] Most of the court's findings appear to be a recitation of evidence presented during the trial. Although the court's findings relate to some of the best interest factors, the court did not discuss the factors or make any findings specifically about the factors. To the extent the court's findings relate to the best interest factors, the findings are neutral or favor

Rick Rustad; however, the court awarded Svetlana Rustad primary residential responsibility. We conclude the court's findings are not sufficient to allow us to discern the factual basis for its decision.

[¶ 9] Furthermore, Rick Rustad contends there was evidence Svetlana Rustad is willfully alienating the child from him. The court's findings indicate it found some of the evidence about alienation was credible. The court must award primary residential responsibility to the parent who will better promote the child's best interests. *Dieterle*, 2013 ND 71, ¶ 6, 830 N.W.2d 571. A parent's hostility toward the other parent can negatively affect the child. *See Krueger v. Hau Tran*, 2012 ND 227, ¶¶ 14, 32, 822 N.W.2d 44. A healthy relationship between the child and both parents is presumed to be in the child's best interests. *Id.* at ¶ 32. Parental alienation is a significant factor in determining primary residential responsibility. *Dieterle*, at ¶ 9. A parent who willfully alienates a child from the other parent may not be awarded primary residential responsibility based on that alienation. *Id.*

[¶ 10] Rick Rustad testified Svetlana Rustad would not allow him to help care for the child while they were married and she threatened to take the child to Russia and not bring her back. He also testified he did not know where Svetlana Rustad and the child were living for two months after she left the parties' home, he tried to call her many times but she did not answer her phone, she initially did not let him have any parenting time, and it felt like she was "cutting [him] out" of the child's life. The parenting investigator testified that Svetlana Rustad did not believe Rick Rustad should have much parenting time with the child after she moved out of the home, she thought he should have supervised time, and that he should only have four days each month in total parenting

time. The parenting investigator also testified that Svetlana Rustad did not believe Rick Rustad was a very important part of the child's life or that both parents should have equal time with the child and Svetlana Rustad felt Rick Rustad's parenting should take a "back seat" to her and her mother's parenting of the child. The parenting investigator testified that Svetlana Rustad said she was going to save emails from Rick Rustad and show them to the child when the child was of proper age, which would potentially alienate the child from Rick Rustad. The investigator also testified there are no pictures of Rick Rustad in Svetlana Rustad's home, Svetlana Rustad did not show that she would be very encouraging of the child's relationship with her father, and Rick Rustad was very encouraging of the child's relationship with her mother. The investigator testified that she has some concerns that Svetlana Rustad might take the child to Russia and not return. Svetlana Rustad testified that she does not think Rick Rustad is a good father and she believes it is better for her mother to care for the child than for Rick Rustad to care for the child.

[¶ 11] The court made some findings about some of the alienation evidence, and the court's findings indicate it found at least some of the evidence was credible. The court found Svetlana Rustad does not have any pictures of Rick Rustad in her home, she is overly critical of Rick Rustad's parenting, she blames Rick Rustad for the child's every minor illness even though the child is healthy overall, and she believes her mother should have higher priority in caring for the child than Rick Rustad. However, the court failed to specifically discuss or make any findings about alienation.

[¶ 12] We conclude the district court's findings of fact are not sufficiently specific and detailed to allow this Court to understand the basis for its decision. We reverse the judgment awarding Svetlana Rustad primary residential responsibility of the parties' child and remand for findings on the best interest factors as required by law.

## III

[¶ 13] Rick Rustad argues the district court's property valuation and distribution is clearly erroneous. A district court's decisions regarding the valuation and division of marital property are findings of fact, which will not be reversed on appeal unless they are clearly erroneous. *Datz*, 2013 ND 148, ¶ 21, 836 N.W.2d 598; *Lynnes v. Lynnes*, 2008 ND 71, ¶¶ 12, 16, 747 N.W.2d 93. The court's valuation of property is presumed to be correct. *Datz*, at ¶ 21. We view the evidence in a light most favorable to the court's findings, and the court's valuation will not be set aside when the valuation is within the range of the evidence presented, unless we have a definite and firm conviction a mistake has been made. *Id.*

[¶ 14] Rick Rustad contends the court's valuation of the gold and silver assets is clearly erroneous because half of the assets were purchased using funds from his parents and he is not the sole owner of some of the silver assets awarded to Svetlana Rustad. There was evidence Rick Rustad's parents contributed funds to the purchase of stock, which was later sold and used to purchase the gold and silver. Rick Rustad testified that half of the gold and silver belongs to his parents and that the other half belongs to him. Rick Rustad's mother testified that she and her husband purchased gold and silver with their share of the stock proceeds, Rick Rustad handled the transaction to purchase the gold and silver, but their gold and silver is in their possession. Rick Rustad also explained that he only claimed half of the

gold and silver on his N.D.R.Ct. 8.3 asset and debt listing because half of the assets belong to his parents. The court's valuation of the silver and gold assets is consistent with Rick Rustad's valuation. The court awarded most of the silver and gold to Rick Rustad, but awarded a portion of the silver assets to Svetlana Rustad. There is evidence supporting the court's findings and its valuation is within the range of evidence provided by the parties.

[¶ 15] Rick Rustad claims the court erred in awarding the parties' joint certificate of deposit ("CD") to Svetlana Rustad because both parties testified that they equally contributed to the CD and that they wanted to split the CD evenly. The court must equitably divide the martial property, and all of the parties' property, regardless of source, must be included in the marital estate. *Eberle v. Eberle*, 2010 ND 107, ¶ 19, 783 N.W.2d 254. The court did not err in awarding the CD to Svetlana Rustad.

[¶ 16] We conclude the court's property valuations and distribution are not clearly erroneous.

### IV

[¶ 17] Rick Rustad argues the district court's decision to award Svetlana Rustad rehabilitative spousal support is clearly erroneous. Rick Rustad claims Svetlana Rustad was employed during the marriage, she is educated and has the work skills and experience to find employment, there is no evidence that she gave up any opportunities during the marriage, and there was no evidence of the need for spousal support.

[¶ 18] An award of spousal support is a finding of fact, which will not be reversed unless it is clearly erroneous. *Dieterle*, 2013 ND 71, ¶ 31, 830 N.W.2d 571. Under N.D.C.C. § 14–05–24.1, after considering the parties' circumstances, the district court may order one party to pay spousal support to the other party for any period of time. To determine whether support is appropriate, the district court must consider the following relevant factors from *Ruff v. Ruff*, 78 N.D. 775, 52 N.W.2d 107 (1952) and *Fischer v. Fischer*, 139 N.W.2d 845 (N.D.1966):

> the respective ages of the parties, their earning ability, the duration of the marriage and conduct of the parties during the marriage, their station in life, the circumstances and necessities of each, their health and physical condition, their financial circumstances as shown by the property owned at the time, its value at the time, its income-producing capacity, if any, whether accumulated before or after the marriage, and such other matters as may be material. The trial court is not required to make specific findings, but it must specify a rationale for its determination.

*Dieterle*, at ¶¶ 23, 31. "Rehabilitative spousal support is awarded to equalize the burden of divorce or to restore an economically disadvantaged spouse to independent status by providing that spouse an opportunity to acquire an education, training, work skills, or experience to become self-supporting." *Id.* at ¶ 31.

[¶ 19] The district court ordered Rick Rustad to pay Svetlana Rustad rehabilitative spousal support of $900 per month for six months. The court found Svetlana Rustad is well-educated and capable of supporting herself, but she is unemployed and her unemployment insurance expires in March 2013. The court also found Rick Rustad has the ability to pay some reasonable rehabilitative support and Svetlana Rustad will need support for a brief period of time during her transition to new employment. Under the circumstances, we conclude the court's decision to award re-

habilitative spousal support is not clearly erroneous.

V

[¶ 20]  We affirm the judgment in part, reverse in part, and remand.

[¶ 21]  GERALD W. VANDE WALLE, C.J., MARY MUEHLEN MARING, DANIEL J. CROTHERS, and DALE V. SANDSTROM, JJ., concur.