2014 ND 2

**Melissa L. Horacek LUCAS, Plaintiff and Appellant**

v.

**Richard LUCAS, Defendant and Appellee.**

**No. 20130070.**

Supreme Court of North Dakota.

Jan. 14, 2014.

Melissa L. Horacek, self-represented, Goodrich, N.D., plaintiff and appellant.

Gregory I. Runge, Bismarck, N.D., for defendant and appellee.

KAPSNER, Justice.

[¶1] Melissa Horacek appeals from a judgment granting Richard Lucas's motion to change primary residential responsibility for their minor child from Horacek to Lucas. Because we conclude the district court failed to make sufficient findings of fact to explain its decision to change primary residential responsibility to Lucas, we reverse and remand for further findings.

I

[¶2] Horacek and Lucas were married in 2005 and divorced in a judgment entered in 2011. The divorce judgment granted primary residential responsibility of their minor child, K.J.L., to Horacek with parenting time awarded to Lucas.

[¶3] On May 26, 2012, on arriving at home after picking up K.J.L. for weekend parenting time, Lucas noticed bruising on K.J.L.'s legs and asked K.J.L. what had happened. According to Lucas, K.J.L. stated that her mother and half-brother had hit her. Lucas immediately called the Burleigh County Sheriff's Department, and Officer Ray Dingeman came to Lucas's home and inspected K.J.L.'s bruises. The court found the officer observed bruising just below the buttocks on the back of the leg that was consistent with marks from fingers, and there was a long thin bruise lower on the same side of the leg. The court found that when the officer asked K.J.L. what happened, she told him that her half-brother hit her with a stick and that her mother had spanked her with her hand. Officer Dingeman also photographed the marks on K.J.L.

[¶4] In July 2012, Horacek moved the district court for an order to show cause,

requesting Lucas be held in contempt for not returning their child to her. The court referred the matter to a judicial referee. In August 2012, Lucas responded to Horacek's motion and also moved the court to modify the judgment to change primary residential responsibility from Horacek to him.

[¶ 5] The order to show cause was subsequently dismissed, and in September 2012, the district court entered an order, holding Horacek had not filed a brief or affidavits in response to Lucas's motion and Lucas had established a prima facie case to proceed with an evidentiary hearing on his motion. Horacek responded to oppose Lucas's motion. After a November 2012 evidentiary hearing, the district court changed primary residential responsibility of the child to Lucas, and a judgment was subsequently entered.

## II

[¶ 6] Horacek argues the district court erred in finding a prima facie case to proceed with an evidentiary hearing on Lucas's motion to change primary residential responsibility.

[¶ 7] Section 14–09–06.6, N.D.C.C., governs post-judgment primary residential responsibility modification, and when a party moves to modify residential responsibility within two years after an order establishing residential responsibility, the court applies a stricter or more rigorous modification standard. *See* N.D.C.C. § 14–09–06.6(5); *In re N.C.M.*, 2013 ND 132, ¶ 9, 834 N.W.2d 270; *Laib v. Laib*, 2008 ND 129, ¶ 8, 751 N.W.2d 228. To obtain an evidentiary hearing on a motion for modification, the party seeking the modification must first establish a prima facie case under N.D.C.C. § 14–09–06.6(4). However, we have explained that "any issue regarding the evidentiary basis for a court's decision that a prima facie case has been established under N.D.C.C. § 14–09–06.6(4) is rendered moot once the evidentiary hearing is held." *Kartes v. Kartes*, 2013 ND 106, ¶ 18, 831 N.W.2d 731; *see also In re N.C.M.*, at ¶ 10.

[¶ 8] Here, the district court held a November 2012 evidentiary hearing on Lucas's motion to change primary residential responsibility. Because the court held a full evidentiary hearing on Lucas's motion, the issue regarding whether the court erred in granting the hearing under N.D.C.C. § 14–09–06.6(4) is moot. We therefore do not address whether the court erred in concluding Lucas established a prima facie case.

## III

[¶ 9] Horacek argues the district court erred in finding "exceptional circumstances" existed to change primary residential responsibility of their minor child, erred in finding Lucas's allegations of abuse constituted a material change in circumstances, and erred in modifying the original custody order.

## A

[¶ 10] Because Lucas's motion to modify primary residential responsibility was made within two years of entry of the divorce judgment granting Horacek primary residential responsibility, the motion is governed by N.D.C.C. § 14–09–06.6(5):

The court may not modify the primary residential responsibility within the two-year period following the date of entry of an order establishing primary residential responsibility unless the court finds the modification is necessary to serve the best interest of the child and:

a. The persistent and willful denial or interference with parenting time;

b. The child's present environment may endanger the child's physical or

emotional health or impair the child's emotional development; or

c. The residential responsibility for the child has changed to the other parent for longer than six months.

*See also* N.D.C.C. § 14–09–06.6(3).

[¶ 11] A district court must award primary residential responsibility to the party who will best promote the child's best interests and welfare. *See Rustad v. Rustad*, 2013 ND 185, ¶ 6, 838 N.W.2d 421; *In re N.C.M.*, 2013 ND 132, ¶ 13, 834 N.W.2d 270. In addressing the child's best interests, the court must consider all relevant factors under N.D.C.C. § 14–09–06.2(1)(a) through (m):

a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

f. The moral fitness of the parents, as that fitness impacts the child.

g. The mental and physical health of the parents, as that health impacts the child.

h. The home, school, and community records of the child and the potential effect of any change.

i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, residential responsibility for a child may be

awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards residential responsibility to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent residential responsibility. As used in this subdivision, "domestic violence" means domestic violence as defined in section 14–07.1–01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.

k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute.

[¶ 12] A district court has broad discretion in making a primary residential responsibility decision, but the court must consider all of the relevant best interest factors under N.D.C.C. § 14–09–06.2(1). *Rustad*, 2013 ND 185, ¶ 6, 838 N.W.2d 421. "Although a separate finding is not re-quired for each statutory factor, the court's findings must contain sufficient specificity to show the factual basis for the custody decision." *Wolt v. Wolt*, 2010 ND 26, ¶ 9, 778 N.W.2d 786. "It is not enough for the district court merely to recite or summarize testimony presented at trial to satisfy the requirement that findings of fact be stated with sufficient specificity." *Datz v. Dosch*, 2013 ND 148, ¶ 9, 836 N.W.2d 598. The court must make specific findings explaining how the statutory factors apply. *Id.* A court's findings are adequate if this Court is able to discern the factual basis for the court's decision, and the findings afford a clear understanding of its decision. *Id.*

[¶ 13] The district court's decision whether to modify primary residential responsibility is a finding of fact, subject to the clearly erroneous standard of review. N.D.R.Civ.P. 52(a); *In re N.C.M.*, 2013 ND 132, ¶ 14, 834 N.W.2d 270. A finding of fact is clearly erroneous if there is no evidence to support it, if the finding is induced by an erroneous view of the law, or if the reviewing court is left with a definite and firm conviction a mistake has been made. *N.C.M.*, at ¶ 14. We will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the district court's decision merely because this Court may have reached a different result. *Id.*

B

[¶ 14] Here, in deciding to change primary residential responsibility, the district court found that the "child's present environment may endanger the child's physical or emotional health or impair the child's emotional development" under N.D.C.C. § 14–09–06.6(5)(b). The court's decision relied primarily on the testimony of Officer Dingeman about the May 2012 incident, which the officer investigated af-

ter Lucas called to report possible child abuse. The officer testified he observed bruising just below the buttock on the back of K.J.L.'s leg. The minor child also apparently told the officer she had been spanked by her mom and hit with a stick by her half-brother. Neither party called the child as a witness at the evidentiary hearing, and the minor child did not testify.

[¶ 15] Specifically, although designated as conclusions of law, the district court made the following relevant findings:

## V.

The second issue the Court must consider is whether the child's environment is endangering her physical or emotional health or impairing her emotional development. During the hearing, [Lucas] testified, but [Horacek] did not. Also, neither party asked for the Court to interview the child. However, since the child is only 5 years old, the Court is unsure if her testimony would be sufficiently compelling due to her age. Also, with the Court's involvement in the prior trial and prior hearings involving both parties, the Court understands that both parties are difficult to assess credibility, since both parties are very self-serving.

## VI.

The most compelling testimony and evidence which was submitted during the hearing relative to the issue of the child's environment came from Officer Dingeman from the Burleigh County Sheriff's Department. Officer Dingeman has been involved with law enforcement for the past 30 years and is familiar with investigating abuse cases. On May 26, 2012, he was contacted to investigate a possible child abuse case after [Lucas] had called the Burleigh County sheriff's office. [Lucas] had picked up K.J.L. on that day for a weekend visitation, and he brought her back to his home in Bismarck, North Dakota. Upon arriving at home, [Lucas] noticed K.J.L. had bruising on her legs. Upon inquiring with the child, she indicated that [Horacek] and K.J.L.'s half-brother had been hitting her.

## VII.

When Officer Dingeman arrived, he observed bruising just below the buttock on the back of her leg. He testified it appeared to be fresh and he took photographs. He also testified from his experience and training and in his opinion the bruising appeared to be a scratch and hand marks. He then spoke with K.J.L., and she stated she was spanked by her mom and hit with a stick by her half-brother. In Officer Dingeman's opinion the bruising was consistent with what the child told him. The Court has reviewed the photo exhibits of the bruising taken by Officer Dingeman (Def.'s Exhibits 9, 10, 12, and 13), and they definitely corroborate his testimony.

## VIII.

In the Court's Memorandum Opinion, dated September 22, 2011, in the divorce trial of this matter, one of the major factors in deciding to grant primary residential responsibility to [Horacek] over [Lucas] was the fact K.J.L. has a half sibling, G.H. The Court stated in pertinent part:

So, in order for the Court to award split custody, or split primary residential responsibility, it needs to find some exceptional circumstances to do so. In reviewing the case at hand, the Court does not find any "exceptional circumstances" to deter from the general rule to not look favorably on sep-

arating siblings. (See pp. 11–12 of Memorandum Opinion.)

Well, based on the evidence submitted in this motion hearing, the Court has changed its opinion. It appears from the incident which took place on or about May 26, 2012, and the resulting investigation by Officer Dingeman that G.H. has hit K.J.L. with a stick and caused bruising. To the Court, it appears evidence has been submitted to find that "exceptional circumstances" do exist to separate the half siblings from primary residential responsibility.

[¶ 16] At the hearing, Officer Dingeman testified that he had lived in Bismarck for approximately 30 years and had been a patrol deputy for the Burleigh County Sheriff's Department for about 19 years. He also testified that he had investigated "several" of these types of incidents over the years. Although the district court relied mainly on the officer's testimony to find the child was "endangered" by her present environment, which also consisted of hearsay that was not objected to by Horacek, the court did not address relevant testimony from a social worker who had also investigated the reported child abuse and testified at the hearing.

[¶ 17] The district court failed to engage in any meaningful analysis under the best-interest factors. In its analysis, the court simply noted that Horacek did not present any analysis or argument regarding the factors, and the court "basically agree[d]" with Lucas's "assertions in his brief" that factors a, b, c, d, e, f, and k favored Lucas over Horacek, and that factors g, h, i, j, l, and m did not favor either party. The court generally referenced its prior involvement with the parties and indicated it was difficult to assess the credibility of either party because both are "self-serving." Although Lucas suggests on appeal that the court "incorporated by

reference" his closing brief after the evidentiary hearing, this is not what is required in the court's findings under the best-interest factors. However, the court only stated that it "basically agree[d]" with Lucas's analysis.

[¶ 18] As we have explained, although the district court need not make separate findings for each factor, the court's "findings of fact must be stated with sufficient specificity to enable a reviewing court to understand the factual basis for the court's decision." *In re S.R.L.*, 2013 ND 32, ¶ 7, 827 N.W.2d 324. Here, however, the district court did not make its own factual findings under the best-interest factors and only "basically agreed" with Lucas's assertions in his briefs regarding the factors. The district court must at least consider the relevant best-interest factors, addressing the evidence that was presented at the hearing. On the record before the district court, we conclude the court's findings are insufficient to understand the basis for the decision and remand is necessary for the court to explain its decision in the context of this motion and in consideration of the evidence presented at the evidentiary hearing, rather than merely indicating the court had changed its mind.

[¶ 19] We therefore conclude the district court's findings of fact are not sufficiently specific and detailed to allow this Court to understand the basis for its decision. We reverse the judgment awarding Lucas primary residential responsibility of the parties' child and remand for findings on the best-interest factors as required by law.

## IV

[¶ 20] We reverse the judgment and remand for additional proceedings consistent with this opinion.

[¶ 21] MARY MUEHLEN MARING, S.J., and DANIEL J. CROTHERS, J., concur.

GERALD W. VANDE WALLE, C.J., concurs in the result.

[¶ 22] The Honorable LISA FAIR McEVERS was not a member of the Court when this case was heard and did not participate in this decision. Surrogate Judge MARY MUEHLEN MARING, sitting.

SANDSTROM, Justice, dissenting.

[¶ 23] I respectfully dissent.

[¶ 24] When a district court finds child abuse and endangerment in the home of one parent, it is not at all clear how weighing other factors could result in the child's being left in that situation. Nevertheless, the majority here would send this case back for such weighing by more explicitly addressing other best-interest factors.

[¶ 25] Curiously, the majority asserts the court did not address relevant testimony of the social worker. But the court did address it implicitly by finding that "[t]he most compelling testimony and evidence which was submitted during the hearing relative to the issue of the child's environment came from Officer Dingeman from the Burleigh County Sheriff's Department."

[¶ 26] The court was entitled to rely on admissible hearsay, particularly the relayed statements of the child, including that she was hit with a stick. The district court found bruising and scratch marks. The child said she was spanked by her mother and hit with a stick by her half brother. The officer testified to seeing a visible hand mark and scratches on the child. The social worker's testimony was unimpressive, to say the least:

Q. The July 30th letter states no services were required; is that correct?

A. Yes.

Q. That does not mean, however, that abuse didn't occur; is that correct?

A. That means that abuse did not occur.

Q. That what condition did not occur?

A. That abuse did not occur.

Q. How can you tell?

A. That the criteria for—for abuse, it did not occur, so—

Q. What is the criteria?

A. I'd have to—I'd have to—I can't name it. It would have to be that it would be disclosed. It would—that it—that it would be—I just—I—honestly, I couldn't tell you right off the top of my head.

Q. One of the items was that it would have to be disclosed; is that correct?

A. Yes.

Q. And [the child] did not disclose?

A. She was not asked.

Q. She was not asked?

A. She was not asked.

. . . .

Q. Now, I guess I don't understand this statement in your letter on Plaintiff's Exhibit 2. The decision was made for no services required as it was not determined that abuse by an adult had occurred. That's not a very clear statement is it, they could not determine?

A. Could not determine.

Q. That's kind of a vague statement, don't you think? It seems to be "they could not determine" does not mean that it did not happen, isn't that correct?

A. I—it—according to what our information was, we could not determine.

Q. Now, did you physically look at [the child]?

A. No, I did not.

Q. Did anybody physically look at [the child]?

A. I can't answer for that, if—if anybody else did.

[¶ 27] The father testified at the hearing, but the mother did not. There is no evidence in the record of problems with primary residential responsibility being with the father. The court concluded the child may be endangered in the mother's home, and said it basically agreed with the best interest analysis in the father's pre-hearing brief, stating which factors supported the father and which favored neither party. No factors favored the mother. On the basis of the finding on endangerment and the rest of the court's findings, I would affirm.

[¶ 28] Dale V. Sandstrom