2014 ND 45

**Adam M. VANDAL, Plaintiff and Appellee**

v.

**Sheena E. LENO, n/k/a Sheena E. Mittleider, Defendant and Appellant.**

No. 20130301.

Supreme Court of North Dakota.

March 11, 2014.

Jaclyn M. Stebbins, Bismarck, ND, for plaintiff and appellee.

Justin D. Hager, Bismarck, ND, for defendant and appellant.

VANDE WALLE, Chief Justice.

[¶ 1] Sheena Leno, now known as Sheena Mittleider, appealed from a district court order denying her expedited motion to reopen the record, and from a judgment awarding Adam Vandal primary residential responsibility of the parties' minor child, L.V. We affirm, concluding the district court's decision to award primary residential responsibility to Vandal was not clearly erroneous. We also conclude the district court did not abuse its discretion in denying Leno's request to reopen the record.

I

[¶ 2] Leno and Vandal were never married. Their relationship began approximately in 2010 and ended in January 2012. During that time, they had one child together, L.V., who was born in 2011. Leno alleged their relationship ended because

Vandal was physically and verbally abusive toward her. Vandal alleged the relationship deteriorated as a result of Leno's selling and abusing prescription drugs and her verbally abusive behavior.

[¶ 3] In March 2012, Vandal filed an action seeking primary residential responsibility and decision-making of L.V. Leno filed an answer and counterclaim seeking primary residential responsibility. Vandal also petitioned the court for an ex parte interim order alleging that the parties' minor child was in imminent danger while in Leno's custody because of her alleged prescription drug abuse. The court issued an ex parte interim order granting Vandal primary residential responsibility of L.V. After a hearing, the court concluded it erred in issuing the ex parte interim order because Vandal did not present evidence of exceptional circumstances. The court vacated the ex parte interim order. A subsequent interim order was entered directing that primary residential responsibility for L.V. be alternated between each parent on a weekly basis.

[¶ 4] In January 2013, a parenting investigator was appointed to the matter. In June 2013, the parenting investigator submitted her report recommending that Vandal should be given primary residential responsibility. The report indicated Leno abused and sold prescription pain medications. The report also contained allegations from Leno that, in late December 2011, Vandal punched her in the back of the head while she was standing at a kitchen sink making a bottle for L.V. Leno did not report the incident to police but ended her relationship with Vandal within days of the alleged incident. Leno also alleged Vandal once threw a baby bottle top at her while she was holding L.V. The top allegedly hit L.V. Vandal denied hitting Leno in the back of the head, instead claiming he poked her with one finger. He admitted throwing a rubber nipple, but denied it hit L.V. At trial he stated the rubber nipple "grazed" the child. The report contained a finding that the incidents did not fit the legal definition of domestic violence. The report included a recommendation that Leno should be required to take a drug and alcohol evaluation.

[¶ 5] A trial was held in July 2013. In August 2013, Leno made a motion to re-open the record to include a letter from an addiction counselor. The court denied the motion as untimely. In September 2013, the court entered a judgment awarding Vandal primary residential responsibility over L.V., including decision-making authority.

II

[¶ 6] This Court reviews an award of primary residential responsibility under the clearly erroneous standard of review, which does not allow us to reweigh the evidence, reassess the credibility of witnesses, or substitute our own judgment for a district court's initial decision. *Martiré v. Martiré*, 2012 ND 197, ¶ 6, 822 N.W.2d 450. A district court's decision awarding primary residential responsibility is a finding of fact which will not be set aside on appeal unless it is induced by an erroneous view of the law, no evidence exists to support it, or, on the entire record, we are left with a definite and firm conviction a mistake has been made. *Smith v. Martinez*, 2011 ND 132, ¶ 3, 800 N.W.2d 304. A choice between two permissible views of the weight of the evidence is not clearly erroneous. *Id.*

[¶ 7] On appeal, Leno argues the court erred in awarding primary residential responsibility to Vandal. "A district court must award primary residential responsibility to the parent who will better promote the child's best interests." *Dieterle v. Dieterle*, 2013 ND 71, ¶ 6, 830

N.W.2d 571. "A district court must consider the best interests of the child in awarding primary residential responsibility, and in doing so must consider all the relevant best-interest factors contained in N.D.C.C. § 14–09–06.2(1)." *Martiré*, 2012 ND 197, ¶ 6, 822 N.W.2d 450. A separate finding for each statutory factor is not necessary, however, the court's findings must contain sufficient specificity to show the factual basis for the decision. *Datz v. Dosch*, 2013 ND 148, ¶ 9, 836 N.W.2d 598. "It is not enough for the district court merely to recite or summarize testimony presented at trial to satisfy the requirement that findings of fact be stated with sufficient specificity. Rather, specific findings explaining how the statutory factors apply in the case are required." *Id.* (citation omitted).

[¶ 8] Leno contends the court erred in deciding several of the statutory best interests of the child factors. In its findings of fact, conclusions of law, and order for judgment, the court considered each of the best interests of the child factors listed in N.D.C.C. § 14–09–06.2. The court found that factors (a), (b), (c), (d), (f), (h), (i), and (j) did not favor either party or were not applicable. The court found factors (e), (g), and (k) favored Vandal. Leno argues several of the factors the court found that favored Vandal, or were not applicable, should have favored her:

[¶ 9] *Factor (b).* Leno contends factor (b), which the court found favored neither party, should have favored her. Factor (b) provides, "[t]he ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment." N.D.C.C. § 14–09–06.2(1)(b). The court stated, "[e]ach parent questions the other parent's environment. Sheena [Leno] questions Adam's [Vandal] ability to control his anger. Adam questions Sheena's use of prescrip-

tion drugs, mental health issues, and marrying Thomas Mittleider, who has an extensive criminal history and is on felony probation." The court additionally found Vandal completed treatment for his past drug and alcohol abuse and that he needs to work on controlling his anger. Leno testified she abused prescription drugs but that she does not currently use prescription pain medication.

[¶ 10] Leno argues the court did not consider an alleged incident in which Vandal was driving at excessive speeds with the child in the car. At trial, the court heard testimony from Leno that she witnessed Vandal "traveling almost at 100 miles per hour" on the interstate. On cross-examination, Vandal stated he was "going like five miles over" the speed limit. Leno also contends the court should have considered that Vandal allegedly displayed his anger in front of the child by punching walls, slamming doors, and calling Leno vulgar names.

[¶ 11] Under the clearly erroneous standard, this Court will not reweigh evidence or reassess the credibility of witnesses. Leno's argument asks this Court to reexamine the evidence that was previously reviewed by the district court and reassess witness credibility. The district court reviewed the evidence, including testimony about Vandal's speeding and anger management issues, slamming doors, vulgar name calling, and punching walls. The court heard testimony concerning Leno selling and abusing prescription drugs. The court noted that Vandal completed treatment for drugs and alcohol and that Leno does not currently use prescription pain medication. The court also heard testimony from both parties that they could provide L.V. with the basic necessities of food, clothing, shelter, and medical care. The parenting investigator testified each party could provide food, clothing,

and shelter but that the function of providing medical care and a safe environment weighed in Vandal's favor. There is evidence in the record to support the court's finding; it is not clearly erroneous.

[¶ 12] *Factor (d).* Leno argues factor (d) should have favored her. The court found the factor favored neither parent. Factor (d) states, "[t]he sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." N.D.C.C. § 14–09–06.2(1)(d). In reviewing the factor, the court stated:

> Adam lives with his mother in her home along with his sister. He has the support of his mother, sister, and his father, who also lives in the [Bismarck] area. Sheena lives with her husband on the farm in the Tappen, North Dakota area. She has the support of her husband's extended family, who also live in the area on the farm. Currently, L.V. is living with each parent one week at a time. L.V. is too young now to have community ties. According to ... the parenting investigator, L.V. is comfortable in both homes.

Leno again essentially urges this Court to reweigh the evidence and testimony. She argues her home environment is more appropriate and that Vandal does not have a desirable living environment. Under the clearly erroneous standard, we do not reweigh the evidence or reassess the credibility of witnesses. Leno is unable to demonstrate that the court's finding regarding factor (d) was clearly erroneous; there is evidence in the record to support the court's finding concerning each parent's home environment.

[¶ 13] *Factor (e).* Leno argues factor (e) should have favored her. The court found the factor favored Vandal. Factor (e) states, "[t]he willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." N.D.C.C. § 14–09–06.2(1)(e). The court found:

> When the parties had L.V. they were immature. Their relationship was at times, hostile. According to the parenting investigator, Sheena was very resistant to allowing Adam to visit L.V. Only after the Interim Order was issued by the Court, was Adam able to have regular contact with L.V. There is nothing in the record to show that Adam withheld Sheena's contact with L.V.

This finding was supported by the testimony at trial. At trial, the parenting investigator testified, "Sheena was resistant to letting Adam take L.V. on those [phone] recordings. That she was very vague about her whereabouts, she was vague about when she was returning, those kinds of things." Under the clearly erroneous standard, there is evidence that exists to support the court's finding in favor of Vandal under this factor.

[¶ 14] *Factor (f).* Leno contends factor (f) should have favored her. The court found factor (f) favored neither party. The factor provides, "[t]he moral fitness of the parents, as that fitness impacts the child." N.D.C.C. § 14–09–06.2(1)(f). The court found that overall, there was nothing in the record to show that either parent acted in an immoral way. Leno argues her military service in the National Guard and her commendation for bravery should have been considered, as well as Vandal's alcohol and marijuana convictions. The court did hear testimony concerning her military service and Vandal's convictions. "Although this Court may have given different weight to the evidence regarding the moral fitness of the parents,

we will not reweigh the testimony and we defer to the district court's opportunity to observe and assess witness credibility." *Wolt v. Wolt*, 2010 ND 26, ¶ 29, 778 N.W.2d 786. The district court's finding was not clearly erroneous.

[¶ 15] *Factor (g).* Leno argues factor (g) should have favored neither party. The court found factor (g) favored Vandal. Factor (g) states, "[t]he mental and physical health of the parents, as that health impacts the child." N.D.C.C. § 14–09–06.2(1)(g). The court found that Leno suffers from depression and anxiety, and that she abused pain killer medication while she was pregnant with L.V. The court found Vandal went through treatment for his past marijuana and alcohol use. At trial, the parenting investigator testified, "[m]y main concern under that factor was the history of prescription drug use that wasn't addressed or wasn't ever resolved, treated, discussed with a therapist, it was just kind of hanging there." Given the evidence Leno may have lingering mental health issues and Vandal sought treatment, the court did not err in finding factor (g) in favor of Vandal.

[¶ 16] *Factor (j).* Leno argues factor (j) should have favored her. The court found factor (j) favored neither party. Factor (j) considers evidence of domestic violence:

> In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic vi-

olence may not be awarded residential responsibility for the child.

N.D.C.C. § 14–09–06.2(1)(j). The term "domestic violence" includes "physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members." N.D.C.C. § 14–07.1–01(2).

[¶ 17] At trial, Leno testified that Vandal punched her in the back of the head while she was making a bottle for L.V. She testified it was a fisted punch, not a poke with a finger; "I got a headache and my glasses flew off my face, my face went down." She also testified Vandal threw a bottle cap at her that allegedly hit the child. The incidents were reported in the parenting investigation report. Leno also testified Vandal kicked her in the leg while she was pregnant and that Vandal caused her back pain by physically holding her down and restraining her so she could not move. Vandal denied he physically acted out toward Leno. Vandal testified the relationship was volatile and there was mutual verbal abuse. There is also testimony from the parenting investigator that Leno may have slapped Vandal in the face.

[¶ 18] In its entire findings for factor (j), the court stated, "[b]oth parties claim that the other party was abusive, physically and verbally. However, none of the incidents meet the definition of domestic violence. As previously stated, both parties were immature and their relationship was at times hostile."

[¶ 19] "When evidence of domestic violence exists, the district court 'must make specific and detailed findings regarding the effect the allegations of domestic violence have on the presumption'

under N.D.C.C. § 14–09–06.2(1)(j)." *Datz,* 2013 ND 148, ¶ 17, 836 N.W.2d 598 (quoting *Smith v. Martinez,* 2011 ND 132, ¶ 18, 800 N.W.2d 304). The court's findings should be sufficiently detailed to allow this Court to understand the basis for its decision. *Smith,* 2011 ND 132, ¶ 18, 800 N.W.2d 304. "When the district court finds a party has committed domestic violence, it must make specific and detailed findings regarding the applicability of the presumption." *Datz,* 2013 ND 148, ¶ 17, 836 N.W.2d 598. "Without findings sufficiently explaining the district court's reason for not applying the rebuttable presumption against awarding custody to the perpetrator of domestic violence, we cannot adequately review its decision." *Smith,* 2011 ND 132, ¶ 18, 800 N.W.2d 304. Evidence of domestic violence that does not trigger the presumption may still be considered in awarding custody. *Wolt,* 2010 ND 26, ¶ 33, 778 N.W.2d 786.

[¶ 20] Based on these minimal findings, Leno argues the court failed to consider the incidents of violence that were presented to the court and that the findings were not sufficiently detailed to allow this Court to understand the basis for its decision. Leno argues the lower court's analysis is deficient for some of the reasons as cited in *Datz v. Dosch,* 2013 ND 148, 836 N.W.2d 598. In *Datz,* we concluded the district court's findings of fact regarding primary residential responsibility were not sufficiently specific and detailed to allow this Court to understand the basis for the lower court's decision. We stated, "[e]xcept for the brief reference to the domestic violence factor, the district court never identified any of the best interest factors in its findings. Rather, the court's findings appear to be a summarization of evidence ... with no discussion of individual factors or explanation of which factors favored which party...." *Id.* at ¶ 12. The lower court in *Datz* also found that the

wife did perpetrate domestic violence against the husband, however the court failed to provide any specific finding or conclusion regarding the presumption. *Id.* at ¶ 16. Additionally, even if domestic violence did not trigger the presumption, this Court was left wondering whether the court considered that evidence as one of the best interest factors. *Id.*

[¶ 21] The instant case is distinguishable from *Datz* in that the lower court made specific findings with respect to each best interest factor. The lower court's analysis under factor (j) is somewhat bereft in its findings and analysis. However, viewed in the light of the record, there is marginally enough specificity for us to understand the factual basis for its decision. Here, the district court determined the alleged domestic violence did not rise to the level of the presumption. In making that finding, the court necessarily made a credibility determination when weighing the contradictory testimony presented by Vandal and Leno. The court heard Vandal's testimony that he poked instead of punched Leno in the head. The court also heard testimony from the parenting investigator concerning the domestic violence factor. The parenting investigator stated, "I did discuss with Sheena her allegations about Adam, as well as his allegations toward her, and it seemed to me like a lot of mutual fighting back and forth." The investigator also testified, "[Vandal] said that Sheena slapped his face with an open hand. Sheena said that he hit her in the back of the head. He said he took his finger and went like that (indicating) on the back of her head...." The parenting investigator concluded the incidents between Vandal and Leno did not rise to the level of domestic violence: "[t]his to me looked like two people bickering and fighting and getting out of control a little bit with their tempers." We decline Leno's

request to reweigh the evidence and reassess the credibility of the witnesses and their allegations. We conclude the district court was not clearly erroneous in deciding that factor (j) favored neither party.

[¶ 22] *Factor (k).* Leno argues factor (k) should have favored neither party. The court found factor (k) slightly favored Vandal. Factor (k) states, "[t]he interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests." N.D.C.C. § 14–09–06.2(1)(k). The court found Vandal cut ties with his former friends who used drugs. The court also found that Leno married Thomas Mittleider, who is on felony probation and has an extensive drug history. Leno has also been associating with Tara Whitworth, who also has a criminal history. There is evidence to support the finding of the district court. The court's finding for factor (k) was not clearly erroneous.

[¶ 23] *Factor (l).* Leno argues factor (l) should have favored her. In its memorandum opinion and order, the court found factor (l) was not applicable. Factor (l) states, "[t]he making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02." N.D.C.C. § 14–09–06.2(1)(l). Leno argues Vandal made false accusations. The parenting investigator made a finding that neither party made false allegations of harm to a child. The record does not reflect either party making false accusations. The finding of the court with respect to factor (l) was not clearly erroneous.

[¶ 24] *Factor (m).* Factor (m) states, "[a]ny other factors considered by the court to be relevant to a particular

parental rights and responsibilities dispute." N.D.C.C. § 14–09–06.2(1)(m). Leno argues the court should have considered an alleged speeding incident, Vandal's fifty hour work week, as well as other issues. The court did in fact hear testimony concerning these issues. The court additionally considered the parenting investigation report. The court found the report was thorough and credible. The court stated, "[b]ased on [the parenting investigator's] testimony and her report, the Court agrees that primary residential responsibility should be with Adam [Vandal]."

[¶ 25] A court cannot delegate to an independent investigator its authority to award custody to the parent who will promote the best interests and welfare of the child. *Marsden v. Koop*, 2010 ND 196, ¶ 8, 789 N.W.2d 531. "The district court has discretion to determine what weight to assign to the custody investigator's conclusions. The district court does not have to, nor should it, regard a custody investigator's recommendation as conclusive." *Id.* Here, the court did not delegate its authority to award custody. In fact, the court disagreed with some of parenting investigator's analysis under the best interests factors. We conclude the court was not clearly erroneous in reviewing the report or in not giving weight to the additional issues raised by Leno.

### III

[¶ 26] Leno argues the district court erred as a matter of law when it denied her motion to reopen the record to introduce a chemical dependency evaluation that was completed after trial. "[T]rial courts are vested with broad discretion in permitting or refusing to permit a party, after having rested, to reopen the case for the purpose of introducing additional proof, and thus the trial court's decision

will not be reversed on appeal absent a showing that such discretion was clearly abused." *Leno v. Ehli,* 339 N.W.2d 92, 96 (N.D.1983). "A district court has broad discretion in evidentiary matters, and [this Court] will not overturn a district court's decision to admit or exclude evidence unless the court abused its discretion." *State v. Gipp,* 2013 ND 134, ¶ 5, 833 N.W.2d 541. "A district court abuses its discretion when it acts in an arbitrary, unreasonable, or capricious manner, or misinterprets or misapplies the law. The appellant bears the burden of proving error." *Id.* (citation omitted). "[A] court's discretion must be exercised in a manner which comports with substantial justice because a 'trial is a search for truth.'" *Steckler v. Steckler,* 492 N.W.2d 76, 79 (N.D.1992) (citation omitted).

[¶ 27] The case between Leno and Vandal had been pending since it was filed on March 6, 2012. The parenting investigation report was submitted June 21, 2013. The report stated, "Sheena should be *required* by the court [to] take a drug [and] alcohol evaluation from a licensed evaluator who has access to her record of pain killer usage. Results should be submitted to the court file to have a record of completion." (emphasis in the original). The trial was held on July 15 and 18, 2013. Leno met with Stephen Conmy, a licensed addiction counselor, on July 10, 2013, to obtain a drug and alcohol evaluation. According to Leno's exhibit 55, a letter sent by Mr. Conmy to her attorney, it was "[impossible] to complete a comprehensive and through [sic] evaluation prior to the Court date on Monday 7/15/13." The evaluation was completed on July 29, 2013. On August 5, 2013, Leno filed an expedited motion to reopen the record to introduce her dependency evaluation. The court denied the motion, stating, "[Leno] had plenty of time to obtain a Drug and Alcohol Evaluation prior to trial. She knew all along her use of prescription drugs was an issue in this case. Her last minute attempt to obtain a Drug and Alcohol Evaluation was untimely."

[¶ 28] Leno argues "it was not until the parenting investigator's report was filed that Mrs. Mittleider was put on notice that anyone might want to have a chemical dependency evaluation for her done." Vandal argues his chief concern for initiating this action pertained to Leno's prescription drug abuse. Additionally, during discovery, Vandal moved the court to compel Leno to release her pharmaceutical records and that the issue of prescription drug abuse was extensively discussed by both parties and the parenting investigator.

[¶ 29] Under these facts, the court did not err when it denied the motion to reopen the record. Leno has not met her burden of showing the court acted arbitrarily, unreasonably, in a capricious manner, or misinterpreted the law. Given the time frame of this case, Leno could have gone through the evaluation process at an earlier point in time as opposed to the eve of trial.

### IV

[¶ 30] We affirm the district court's judgment awarding primary residential responsibility to Vandal. We also affirm the district court's order denying Leno's expedited motion to reopen the record.

[¶ 31] DALE V. SANDSTROM, DANIEL J. CROTHERS, LISA FAIR McEVERS, and CAROL RONNING KAPSNER, JJ., concur.