2014 ND 69

**Nicholas R. LAW, Plaintiff and Appellant**

v.

**Danielle WHITTET,**

**and**

**State of North Dakota, Statutory Real Party in Interest, Defendants.**

No. 20130241.

Supreme Court of North Dakota.

April 7, 2014.

Daniel J. Nagle, Mandan, N.D., for plaintiff and appellant.

Danielle Whittet; no appearance.

SANDSTROM, Justice.

[¶ 1] Nicholas Law appeals from a district court judgment awarding Law and Danielle Whittet joint residential responsibility for their minor child. We reverse and remand, concluding several of the district court's findings of fact are clearly erroneous and Law should be awarded primary residential responsibility for the parties' child.

I

[¶ 2] Law and Whittet met in late 2010 and began dating shortly thereafter. Whittet became pregnant, and the child was born in November 2011. A paternity test confirmed that Law was the biological father. Whittet also has two older children.

[¶ 3] In July 2012, Law began this action seeking primary residential responsibility for the child. An interim order granted the parties joint residential responsibility for the child, with the parties having the child on alternating weeks. At the time the interim order was entered, the parties lived in neighboring towns, Law in Washburn and Whittet in Underwood. A week before the trial, with no notice to Law, Whittet moved to Scranton, which Law and Whittet agreed was a 6½ hour round trip from Washburn.

[¶ 4] At trial, Law presented evidence regarding a September 2012 incident in which Whittet physically assaulted her mother with the three children present. Whittet was arrested and placed in a police vehicle, but she escaped. Whittet ultimately pled guilty to charges of disorderly conduct and escape.

[¶ 5] Following the trial, the district court issued a memorandum order, findings of fact, conclusions of law, and order for judgment. For all but one of the best interest factors under N.D.C.C. § 14–09–06.2(1), the court found the parties were equal or the factor did not apply. The court found factor (c), the ability of each parent to meet the child's developmental needs, favored Whittet because she had taken the child to medical appointments. On factor (j), domestic violence, the court found that neither of the parties had engaged in domestic violence. The court ordered that the parties have joint residential responsibility for the child, with each having physical custody of the child on alternating weeks.

[¶ 6] After the district court issued its memorandum order, but before entry of judgment, Law moved to supplement the record and amend the findings of fact. A hearing on the motion was held, and Law presented evidence that, after the trial and entry of the memorandum order, Whittet had been arrested for and pled guilty to disorderly conduct and preventing arrest, and that Whittet was severely intoxicated at the time of the incident and did not know who was watching her children. The district court denied the motion to amend

the findings of fact on the basis of the new evidence, and judgment was entered awarding the parties joint residential responsibility.

## II

[¶ 7] Law argues the district court's findings of fact on several of the best interest factors, as well as its ultimate finding awarding joint residential responsibility, are clearly erroneous.

[¶ 8] The district court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. *Vandal v. Leno,* 2014 ND 45, ¶ 6, 843 N.W.2d 313; *Rustad v. Rustad,* 2013 ND 185, ¶ 5, 838 N.W.2d 421. A finding of fact is clearly erroneous if there is no evidence to support it, if it is induced by an erroneous view of the law, or if we are convinced, on the basis of the entire record, that a mistake has been made. *Vandal,* at ¶ 6; *Rustad,* at ¶ 5.

[¶ 9] The district court must award primary residential responsibility to the party who will best promote the child's best interests and welfare. *Vandal,* 2014 ND 45, ¶ 7; *Rustad,* 2013 ND 185, ¶ 6, 838 N.W.2d 421. The district court must consider the best interests of the child in determining primary residential responsibility, and must consider all of the relevant best interest factors under N.D.C.C. § 14–09–06.2. *Vandal,* at ¶ 7. Although the court is not required to make a separate finding on each statutory factor, the court must consider all of the factors and make findings with sufficient specificity to demonstrate the factual basis for its decision. *Id.; Rustad,* at ¶ 6; *Datz v. Dosch,* 2013 ND 148, ¶ 9, 836 N.W.2d 598. It is not enough for the district court merely to recite or summarize testimony presented at trial; rather, specific findings explaining how the statutory factors apply in the case

are required. *Vandal,* at ¶ 7; *Rustad,* at ¶ 6; *Datz,* at ¶ 9.

[¶ 10] This case presents a situation similar to *Datz:* the district court simply ignored the significant evidence that was favorable to Law and detrimental to Whittet. Although the district court is neither required to make a separate finding on each best interest factor nor to address each minute detail presented in the evidence, the court may not wholly ignore and fail to acknowledge or explain significant evidence clearly favoring one party. *See Datz,* 2013 ND 148, ¶¶ 12–19, 836 N.W.2d 598; *see also State v. Nelson,* 488 N.W.2d 600, 604 (N.D.1992) ("While credibility of witnesses is normally the province of the trial court, a trial court cannot disregard testimony that is uncontradicted and unchallenged where no basis for doing so appears in the record."). The district court in this case, without explanation, failed to acknowledge or address evidence which clearly indicated several of the best interest factors favored Law.

[¶ 11] For example, factor (b) under N.D.C.C. § 14–09–06.2(1) requires the court to consider the ability of each parent to provide adequate food, clothing, shelter, medical care, and a safe environment. The district court's finding on this factor, in its entirety, states:

> Both parties have provided for the support for the child. Danielle currently does daycare out of her residence. Nicholas is employed as head bartender of the Lewis and Clark saloon working 40 hours per week. In the summer, Nicholas is also employed as the manager of the Big Dipper working a total of 60–80 hours per week between the two jobs. Both parties are equal in this matter.

The record indicates that for more than six years Law had worked full-time as a man-

ager at a bar and during the summers as manager of a seasonal restaurant. Conversely, Whittet's employment history was at best sporadic, and although the court found at the time of trial she was "[doing] daycare out of her residence," the record reflects she was only watching one child an average of eight hours per week. Providing daycare for one child an average of eight hours per week does not provide sufficient income for Whittet to provide adequate food, clothing, shelter, and medical care for the child. In reality, the record demonstrated that Whittet lived on public assistance, child support, and occasional financial support from the men she had lived with at various times. The court's finding that this factor was equal between the parties was clearly erroneous; factor (b) favored Law.

■ [¶ 12] The court also found that factor (d), which requires the court to consider the sufficiency and stability of each parent's home environment and the impact of extended family, was equal between the parties. In reaching this conclusion, however, the court failed to acknowledge or address evidence that, in the four years prior to trial, Whittet had ten different residences. The court did acknowledge that in the 17 months since the parties' child had been born, Whittet had lived in four different residences, but the court, without explanation, found that each of those moves, including the move to Scranton, which put 6½ hours distance between the parties, had been "for the benefit of her children." Whittet's home environment also included the men she lived with at various times, including one who physically abused one of Whittet's older children. By contrast, the evidence in the record indicated Law had a stable home life, owned his own home in Washburn, and was engaged to be married.

[¶ 13] The court also failed to address the impact of extended family, although there was significant evidence in the record. The record indicates Law comes from a very close and loving extended family, including Law's parents, who have a significant relationship with the child. By contrast, the evidence in the record suggests Whittet's family life has been dysfunctional, including physical abuse when she was younger, several years spent in foster care, and physical violence between Whittet and her mother in front of her children.

[¶ 14] In spite of the evidence in the record, the court found factor (d) was equal between the parties. We are at a loss to understand or explain the court's finding. On the basis of this record, Law has demonstrated a markedly stable home life and an extended family which has had a demonstrably positive impact on the child. Whittet's home environment, however, demonstrates remarkable instability, averaging a move every few months, and has subjected the child to constant change and inconsistency. In addition, Whittet's home environment subjected the child to a live-in boyfriend who physically assaulted one of Whittet's other children, and her extended family life subjected the child to a physical altercation between Whittet and her mother requiring intervention by law enforcement and Whittet's arrest. On the basis of the entire record, we conclude the district court's finding that factor (d) was equal was clearly erroneous, and factor (d) favored Law.

[¶ 15] The most troubling aspect of the district court's decision, however, is its treatment of factor (j), domestic violence. The district court found that neither party had engaged in domestic violence.

[¶ 16] Factor (j) under N.D.C.C. § 14–09–06.2(1) requires the district court to consider evidence of domestic violence

when determining parental rights and responsibilities. For purposes of this determination, domestic violence means domestic violence as defined in N.D.C.C. § 14–07.1–01. N.D.C.C. § 14–09–06.2(1)(j). Section 14–07.1–01(2) defines domestic violence:

"Domestic violence" includes physical harm, bodily injury, sexual activity compelled by physical force, assault, or the infliction of fear of imminent physical harm, bodily injury, sexual activity compelled by physical force, or assault, not committed in self-defense, on the complaining family or household members.

"Family or household member" includes a "parent." N.D.C.C. § 14–07.1–01(4). This Court has recognized that by choosing the term "family or household member" when defining domestic violence under N.D.C.C. § 14–09–06.2(1)(j), the legislature intended the factor to apply whenever violence is directed at any member of the household or family, and domestic violence is not confined to instances in which the child or one of the parties is the direct victim of the violence. *See Niemann v. Niemann*, 2008 ND 54, ¶ 15, 746 N.W.2d 3; *Anderson v. Hensrud*, 548 N.W.2d 410, 413 (N.D.1996); *Heck v. Reed*, 529 N.W.2d 155, 164 (N.D.1995). Thus, under the unambiguous statutory definition, a party who assaults or causes physical harm to her parent has engaged in domestic violence under factor (j).

■■■■■ [¶ 17] When evidence of domestic violence exists, the district court must make specific and detailed findings of fact regarding the effect the allegations of domestic violence have on the rebuttable presumption against custody under N.D.C.C. § 14–09–06.2(1)(j). *Datz*, 2013 ND 148, ¶ 17, 836 N.W.2d 598. A trial court cannot simply ignore evidence of family abuse, but must make specific findings on evidence of domestic violence in making its decision on primary residential responsibility. *Helbling v. Helbling*, 532 N.W.2d 650, 653 (N.D.1995). Even if the evidence of domestic violence does not trigger the statutory presumption under N.D.C.C. § 14–09–06.2(1)(j), the violence must still be considered as one of the factors in deciding primary residential responsibility, and when credible evidence of domestic violence exists it "dominates the hierarchy of factors to be considered" when determining the best interests of the child under N.D.C.C. § 14–09–06.2. *Datz*, 2013 ND 148, ¶ 18, 836 N.W.2d 598 (quoting *Wessman v. Wessman*, 2008 ND 62, ¶ 13, 747 N.W.2d 85).

[¶ 18] The record in this case includes extensive evidence regarding the September 2012 incident involving Whittet and her mother. The arresting officer testified he responded to a domestic disturbance call involving Whittet and her boyfriend at approximately 3:00 a.m. Whittet, who was "very intoxicated," was outside "hollering, yelling, and screaming," and when she refused to stop or go inside the officers took her into custody and gave her the option of going to jail for detox or going to stay with a family member. At Whittet's request, the officer took Whittet to her mother's house, where Whittet's three children were staying.

[¶ 19] At approximately 4:30 a.m., the officers were called to a domestic dispute at Whittet's mother's home. The arresting officer described the incident:

A One of the neighbors had called in and said there was a lot of yelling and screaming, and they were very concerned. So we went—I went over there and made contact with [Whittet's mother]. And I knocked on the door and she opened the door and she said, get her out of here. And [Whittet] was yelling and hollering. There was stuff strewn all over the floor. There was a coat

rack laying on the floor. The kids were crying.

So I tried talking to her and getting her out of here. She was handcuffed, and she was charged with disorderly conduct. When I was escorting her out of the place, she was screaming, you know, thanks, I just lost custody of my kids; and she jumped up in the air and she kicked the door and the door flew open. Took her outside. I put her in the back of my vehicle.

Q What—when this was going on, what were the-where were the kids, and what were the kids doing?

A The kids were inside. They were crying inside in the living room area of [Whittet's mother's] place. They were brought over to the neighbor's place after I got her out of the house.

The officer observed Whittet's mother had suffered an injury to her arm. Whittet's mother explained her arm was injured when Whittet pushed her against a bed.

[¶ 20] Although Whittet had been handcuffed and placed in the back seat of the officer's vehicle, she escaped. She eventually pled guilty to charges of disorderly conduct and escape.

[¶ 21] Despite the officer's uncontradicted testimony regarding this incident, the district court's finding on factor (j), in its entirety, provides: "The Court does not give weight to this factor as neither of the parties has engaged in domestic violence." This finding is wholly unsupported by the record. The record establishes that Whittet assaulted and caused physical harm to her mother in the September 2012 incident. By definition, this constituted domestic violence under factor (j). See N.D.C.C. §§ 14–07.1–01(2) and (4), and 14–09–06.2(1)(j). Although the incident may not be sufficient, standing alone, to trigger the statutory presumption under factor (j), the do-mestic violence still must be considered as one of the best interest factors, and in fact "dominates the hierarchy" of the best interest factors under N.D.C.C. § 14–09–06.2. The district court's finding of fact is clearly erroneous, and factor (j) favored Law.

[¶ 22] Finally, we reach the district court's ultimate finding of fact: that an award of joint residential responsibility was in the child's best interest. The district court based this finding on its underlying findings that all of the best interest factors except factor (c), ability of each parent to meet the child's developmental needs, were either equal or inapplicable. We have concluded, however, that factors (b), (d), and (j) clearly favored Law, and the district court's findings of fact on those factors were clearly erroneous. Reviewing the entire record, this simply is not a close case. Law has a stable employment history, is engaged to be married, has purchased a home with his fianceé, and has the support of a large extended family. Whittet's home environment, by contrast, is markedly unstable. She has lived in ten different residences in four years, including four residences during the child's first 17 months; lived with a man who physically abused one of her older children; has a sporadic employment history; lived on public assistance, child support, and financial assistance from her boyfriends; and did not have support of an extended family. Most significantly, Whittet engaged in an act of domestic violence, assaulting her mother while her children were present. As previously noted, acts of domestic violence "dominate the hierarchy" of the best interest factors under N.D.C.C. § 14–09–06.2.

[¶ 23] On the basis of our review of the entire record in this case, we conclude the district court's finding that an award of

joint residential responsibility is in the child's best interest is clearly erroneous. Accordingly, we reverse the judgment and remand for entry of judgment awarding primary residential responsibility to Law. We further direct that the district court on remand set an appropriate parenting time schedule and recalculate child support in light of the change in primary residential responsibility. In determining a parenting time schedule for Whittet, the court must bear in mind the presumption that any domestic violence, even if not directed at the child, negatively affects the best interests of the child. *See Niemann*, 2008 ND 54, ¶ 15, 746 N.W.2d 3; *Anderson*, 548 N.W.2d at 413; *Heck*, 529 N.W.2d at 164. Accordingly, the court should consider limited parenting time for Whittet.

### III

[¶ 24] Law contends the district court erred in denying his motion to supplement the record and amend the findings of fact. Because we have reversed the judgment and remanded for entry of judgment awarding primary residential responsibility to Law, we find it unnecessary to address this issue.

### IV

[¶ 25] We reverse the judgment and remand for further proceedings in accordance with this opinion.

[¶ 26] GERALD W. VANDE WALLE, C.J., WILLIAM F. HODNY, S.J., and CAROL RONNING KAPSNER, J., concur.

[¶ 27] The Honorable WILLIAM F. HODNY, S.J., sitting in place of LISA FAIR McEVERS, J., disqualified.

CROTHERS, Justice, specially concurring.

[¶ 28] I concur in the result. I agree the district court erred applying the law and in not applying the evidence to certain best interest factors. However, I would remand to the district court to perform the fact-finding function. *See Klein v. Larson*, 2006 ND 236, ¶¶ 33–36, 724 N.W.2d 565 (Crothers, J., concurring in part and dissenting in part) (remand to district court for fact-finding normally is required when law has been misapplied).

[¶ 29] Daniel J. Crothers