2016 ND 90

**STATE of North Dakota, Plaintiff and Appellee**

and

**Shannon L. Strating, Plaintiff and Appellant**

v.

**Kenneth A. ANDRES, Defendant and Appellee.**

No. 20150328.

Supreme Court of North Dakota.

May 26, 2016.

Steven G. Podoll, Child Support, Bismarck N.D., for plaintiff and appellee.

Kristin A. Redmann, Bismarck N.D., for plaintiff and appellant.

Rodney E. Pagel, Bismarck N.D., for defendant and appellee.

CROTHERS, Justice.

[¶ 1] The State of North Dakota and Shannon Strating appeal from a district court order granting Strating and Ken Andres equal residential responsibility of Strating and Andres' child. Strating argues the district court erred in its analysis of the best interest factors and in its parenting plan and by issuing a written order inconsistent with its oral order. The State and Strating argue the district court failed to comply with child support guidelines. We reverse and remand with instructions for the district court to add the missing statutorily mandated child support calculations and parenting plan provisions. We affirm the remainder of the judgment.

I

[¶ 2] Strating and Andres are the nonmarital parents of one child. Strating applied for child support and the North Dakota Child Support Enforcement Unit commenced a paternity action against Andres. An interim order gave Strating primary residential responsibility and gave Andres parenting time once per week and every other weekend and imposed a child support obligation on Andres. At the conclusion of trial the district court judge suggested Strating would receive primary residential responsibility and asked Strating and Andres to develop a parenting plan. Strating and Andres were unable to agree on a parenting plan. The district court entered Findings of Fact, Conclusions of Law and an Order for Judgment granting equal residential responsibility. No child support was ordered. Strating moved the district court to amend its Findings of Fact, Conclusions of Law and Order for Judgment. The district court de-

nied her motion and the State and Strating appeal.

## II

▮ [¶ 3] Strating argues the district court erred in granting her and Andres equal residential responsibility because its findings of fact on the best interest factors were clearly erroneous.

"The district court's award of primary residential responsibility is a finding of fact, which will not be reversed on appeal unless it is clearly erroneous. A finding of fact is clearly erroneous if there is no evidence to support it, if it is induced by an erroneous view of the law, or if we are convinced, on the basis of the entire record, that a mistake has been made."

*Law v. Whittet,* 2014 ND 69, ¶ 8, 844 N.W.2d 885 (internal citations omitted).

▮ [¶ 4] The district court is required to consider the best interests and welfare of children in determining the rights and responsibilities of the parents. N.D.C.C. § 14–09–06.2. In deciding the children's best interests the "court must consider all [relevant] factors specified in N.D.C.C. § 14–09–06.2(1)." *Schmidt v. Schmidt,* 2003, ND 55, ¶ 6, 660 N.W.2d 196. Section 14–09–06.2(1), N.D.D.C., outlines the following factors for assessing the child's best interests and welfare:

"a. The love, affection, and other emotional ties existing between the parents and child and the ability of each parent to provide the child with nurture, love, affection, and guidance.

"b. The ability of each parent to assure that the child receives adequate food, clothing, shelter, medical care, and a safe environment.

"c. The child's developmental needs and the ability of each parent to meet those needs, both in the present and in the future.

"d. The sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community.

"e. The willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child.

"f. The moral fitness of the parents, as that fitness impacts the child.

"g. The mental and physical health of the parents, as that health impacts the child.

"h. The home, school, and community records of the child and the potential effect of any change.

"i. If the court finds by clear and convincing evidence that a child is of sufficient maturity to make a sound judgment, the court may give substantial weight to the preference of the mature child. The court also shall give due consideration to other factors that may have affected the child's preference, including whether the child's preference was based on undesirable or improper influences.

"j. Evidence of domestic violence. In determining parental rights and responsibilities, the court shall consider evidence of domestic violence. If the court finds credible evidence that domestic violence has occurred, and there exists one incident of domestic violence which resulted in serious bodily injury or involved the use of a dangerous weapon or there exists a pattern of domestic violence within a reasonable time proximate to the proceeding, this combination creates a rebuttable presumption that a parent who has perpetrated domestic violence may not be awarded residential

responsibility for the child. This presumption may be overcome only by clear and convincing evidence that the best interests of the child require that parent have residential responsibility. The court shall cite specific findings of fact to show that the residential responsibility best protects the child and the parent or other family or household member who is the victim of domestic violence. If necessary to protect the welfare of the child, residential responsibility for a child may be awarded to a suitable third person, provided that the person would not allow access to a violent parent except as ordered by the court. If the court awards residential responsibility to a third person, the court shall give priority to the child's nearest suitable adult relative. The fact that the abused parent suffers from the effects of the abuse may not be grounds for denying that parent residential responsibility. As used in this subdivision, 'domestic violence' means domestic violence as defined in section 14–07.1–01. A court may consider, but is not bound by, a finding of domestic violence in another proceeding under chapter 14–07.1.

"k. The interaction and interrelationship, or the potential for interaction and interrelationship, of the child with any person who resides in, is present, or frequents the household of a parent and who may significantly affect the child's best interests. The court shall consider that person's history of inflicting, or tendency to inflict, physical harm, bodily injury, assault, or the fear of physical harm, bodily injury, or assault, on other persons.

"l. The making of false allegations not made in good faith, by one parent against the other, of harm to a child as defined in section 50–25.1–02.

"m. Any other factors considered by the court to be relevant to a particular parental rights and responsibilities dispute."

The district court considered all of the best interest factors and made findings for each.

[¶ 5] Strating argues the district court clearly erred in its analysis of factors (d), (e), (j), (k) and (m). Section 14–09–06.2(1)(d), N.D.C.C., relates to "[t]he sufficiency and stability of each parent's home environment, the impact of extended family, the length of time the child has lived in each parent's home, and the desirability of maintaining continuity in the child's home and community." The district court found Strating had no immediate family in the area and Andres had family members both in and near Bismarck and Mandan. The district court considered evidence Strating's previous home in Flasher was unsanitary and Andres' brother had a criminal record, but the child had no relationship with the brother. The district court considered Strating the child's primary caretaker and found both Strating and Andres had a stable home and job.

[¶ 6] Section 14–09–06.2(1)(e), N.D.C.C., relates to "the willingness and ability of each parent to facilitate and encourage a close and continuing relationship between the other parent and the child." The district court found Strating and Andres had difficulty communicating with each other but both parents appeared to believe the child's time with the other parent was important. The district court found no evidence either parent would discourage such relationships. Strating and Andres appeared to be able to facilitate their child's relationship with the other parent during the interim order.

[¶ 7] Section 14–09–06.2(1)(j), N.D.C.C., relates to evidence of domestic violence. The district court considered evidence Andres had been verbally abusive

or demeaning towards Strating. Strating also alleged Andres pushed her while she was pregnant, but the district court did not make findings based on these allegations.

[¶ 8] Section 14–09–06.2(1)(k), N.D.C.C., relates to the interaction, or potential for interaction, between the child and a person present in the household who may significantly affect the child's best interests. The district court found Strating's concerns about Andres' employees to be without merit and found no other evidence of persons frequenting the house who would negatively affect the child's best interests.

[¶ 9] "While each factor relevant to a child should be given equal consideration, some factors may prove to be more important in one situation than in another with different circumstances. The best interests of the child is a fact-intensive test which must be examined on a case-by-case basis." *P.A. v. A.H.O.*, 2008 ND 194, ¶ 15, 757 N.W.2d 58. The district court found most factors favored neither parent. The district court found the parties had been able to communicate with each other for the child's best interest in its factor (m) analysis.

> "In applying the clearly erroneous standard, we will not reweigh evidence, reassess witness credibility, retry a custody case, or substitute our judgment for the trial court's decision merely because this Court may have reached a different result. A choice between two permissible views of the weight of the evidence is not clearly erroneous. [O]ur deferential review is especially applicable for a difficult primary residential responsibility decision involving two fit parents."

*Hammeren v. Hammeren*, 2012 ND 225, ¶ 8, 823 N.W.2d 482 (internal citations and quotations omitted). The district court's analysis was supported by evidence in the record and therefore not clearly erroneous.

III .

[¶ 10] Strating argues the district court erred because the judgment did not include the child's legal residence for school purposes or address transportation. Parents are required to submit a parenting plan to the court "to be included in the court's decree," but in circumstances when parents are unable to agree on a parenting plan, "the court shall issue a parenting plan considering the best interests of the child." N.D.C.C. § 14–09–30(1). Section 14–09–30(2), N.D.C.C., requires parenting plans to either address or explain the omission of information related to decision making, information sharing and access, legal residence of the child for school attendance, residential responsibility, parenting time and parenting schedule, transportation and exchange, procedure for review and adjustment and methods for resolving disputes.

[¶ 11] The district court judgment includes, "[t]he legal residence of [the child] for school purposes is Bismarck, North Dakota." The judgment provides when and at what time exchanges will take place between Strating and Andres but does not provide which party is to travel to the other, how they will do so or where they shall meet. Because N.D.C.C. § 14–09–30(2) requires certain provisions to be included in a parenting plan "at a minimum," and because those provisions include transportation and exchange and the child's legal residence for school attendance, the district court's failure to include them was erroneous. These provisions are especially important in cases, such as this, when the court creates a parenting plan as a result of the parents' inability to agree to one themselves. On remand, the district court must include these provisions or provide an explanation for their omission.

[¶ 12] Strating also argues the district court erred because the holiday schedule is inequitable and therefore clearly erroneous. The district court provided a detailed holiday schedule and instructed the parties that "[i]f it appears the holiday/two week times are resulting in inequitable parenting time, the parents are to consult a mediator or parenting coordinator to make appropriate adjustments." Because it has not been shown the current plan harms the child's best interests and because the parties may modify the plan through mediation, the district court's judgment is not clearly erroneous.

## VI

[¶ 13] Strating argues the district court erred issuing a written order inconsistent with its oral order. At the conclusion of the trial the district court stated:

"THE COURT: I'm going to tell you up front that I see nothing that indicates that these parents both should have as equal a parenting time as is possible, and my intention is to issue an order to that effect. In the meantime, what I would request, and whether this works or not I don't know, but I know Mr. Andres submitted a parenting time proposal. I haven't looked at it, but I understand from his testimony that it's basically equal or close to that. I would ask that the parties attempt to agree on a parenting time schedule. And I will tell you that I believe Ms. Strating should have primary residential responsibility, but that Mr. Andres should have, again, as equal a parenting time as possible. And I would ask that you try to come to a resolution of that.

. . . .

"MR. PAGEL: Just so I'm clear, Your Honor. My understanding is the Court's order is for Ms. Strating to have primary and for us to try and get as equal as a parenting time schedule as possible with that?

"THE COURT: Correct. And also equal decision making and all the other that goes with that.

"MR. PAGEL: Thank you, Your Honor.

"THE COURT: And I will—I mean, if you either submit something or are unable to, I'm going to issue an order that, you know, includes findings and the reasons for my conclusions. So, you know, I'm going to have that in writing. But again, if you can resolve it on your own, that would be much better.

[¶ 14] After Strating and Andres failed to agree on a parenting plan, the district court entered a written order stating:

"The parents will share primary residential responsibility for [the child]. . . . The parents will alternate having [the child] on a biweekly basis.

. . . .

"Each parent will have all the rights and duties set out at N.D.C.C. § 14–09–32.

. . . .

"Because the parents have equal primary residential responsibility and parenting time, neither will be required to pay child support to the other. The parents will alternate claiming [the child] for income tax purposes yearly, with [Strating] claiming the exemption for tax year 2015."

[¶ 15] "[I]f there is a discrepancy between a trial court's oral and subsequent written statements, the written statements control." *Brown v. Brodell*, 2008 ND 183, ¶ 12, 756 N.W.2d 779 (citing *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 26, 705 N.W.2d 836). "[A] trial court's written findings of fact prevail when a discrepancy exists between those findings and the court's prior memorandum opinion or oral ruling." *Fenske v. Fenske*, 542 N.W.2d 98, 102 (N.D.1996) (quoting *Fed. Land Bank*

*of St. Paul v. Lillehaugen,* 404 N.W.2d 452, 454 (N.D.1987)). Because the district court's written judgment supersedes any ruling from the bench, it was not error for the court to enter a written judgment inconsistent with earlier oral statements.

### V

[¶ 16] The State and Strating argue the district court erred in its child support calculation. "'Child support determinations involve questions of law which are subject to the de novo standard of review, findings of fact which are subject to the clearly erroneous standard of review, and may, in some limited areas, be matters of discretion subject to the abuse of discretion standard of review.'" *Keita v. Keita,* 2012 ND 234, ¶ 15, 823 N.W.2d 726 (quoting *Buchholz v. Buchholz,* 1999 ND 36, ¶ 11, 590 N.W.2d 215).

[¶ 17] "'The failure to properly apply the child support guidelines to the facts involves an error of law.'" *Becker v. Becker,* 2011 ND 107, ¶ 12, 799 N.W.2d 53 (quoting *Heinle v. Heinle,* 2010 ND 5, ¶ 36, 777 N.W.2d 590). We will reverse and remand a district court's child support decision if the district court does not clearly state how it arrived at the amount of income and level of support." *Becker,* at ¶ 13. "A child support obligation must be determined ... in all cases in which a court orders each parent to have equal residential responsibility for their child...." N.D. Admin. Code § 75–02–04.1–08.2.

[¶ 18] In cases of equal residential responsibility, "a child support obligation for each parent must be calculated ... assuming the other parent has primary residential responsibility for the child ..." and their obligations can be offset for ease of payment. *Id.* Here, the district court did not make child support calculations for either party. The district court omitted a child support provision because "the parents have equal primary residential responsibility and parenting time...." Under the plain language of the statute, the district court's failure to calculate child support for each party was erroneous and a remand is necessary for its inclusion.

### VI

[¶ 19] We reverse and remand with instructions for the district court to add the missing statutorily mandated child support calculations and parenting plan provisions. We affirm the remainder of the judgment.

[¶ 20] GERALD W. VANDE WALLE, C.J., LISA FAIR McEVERS, CAROL RONNING KAPSNER and DALE V. SANDSTROM, JJ., concur.